HONORABLE JAMES L. ROBART

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MONTY J. BOOTH, ATTORNEY AT LAW,
P.S., a Washington corporation, individually and
on behalf of a class of Washington businesses
similarly situated,

                    Plaintiff,

      vs.

APPSTACK, INC., a Delaware corporation;
STEVE ESPINOSA, individually; and JOHN
ZDANOWSKI, individually,

                  Defendants.

NO. 2:13-cv-01533-JLR

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**Noted for Consideration:  12/19/2014**

**ORAL ARGUMENT REQUESTED**

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................2

      A.    Defendants Sold "Mobile Advertising Solutions" to Small Businesses ..............2

      B.    Defendants Placed Millions of Unsolicited Robocalls Advertising
            Their Services to Potential Customers ........................................................3

            1.    Defendants Used an Automatic Dialing and Announcing Device
                  to Place the Robocalls ........................................................................3

            2.    Defendants Did Not Obtain Potential Customers' Consent
                  Before Placing the Calls ......................................................................4

            3.    Defendants Robocalled Millions of Potential Customers Including
                  Plaintiffs ..........................................................................................5

      C.    Class Members Can Be Identified Using Defendants' Call Records,
            Reverse Look-Up Directories, and Billing Records ...........................................6

III.  THE PROPOSED CLASSES .............................................................................7

IV.   ARGUMENT AND AUTHORITY ....................................................................8

      A.    Plaintiffs Satisfy the Standards for Class Certification ........................................8

            1.    The Numerosity Standard is Met.............................................................9

            2.    The Commonality Standard is Met.........................................................10

            3.    The Typicality Standard is Met ............................................................11

            4.    The Class is Adequately Represented ....................................................12

      B.    Plaintiffs Satisfy the Requirement of Rule 23(b)(3)............................................13

            1.    Common Issues Predominate ................................................................14

                  a.    WADAD claim.................................................................14

                  b.    CPA claim ......................................................................18

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

        c.     TCPA claim ................................................................19

    2.    A Class Action Is Superior ....................................................20

    3.    This Case Is Manageable .......................................................20

C.    Constitutionally Sound Notice Can Be Provided to Class Members .................21

D.    The Court Should Appoint TMDW and Mr. Gallagher as Class Counsel .........22

V.    CONCLUSION ................................................................................22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF AUTHORITIES

Page No.

## FEDERAL CASES

*Abdullah v. U.S. Sec. Assoc., Inc.*,
  731 F.3d 952 (9th Cir. 2013) .................................................................................10, 14

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) ............................................................9, 10, 12, 19

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
  — U.S.—, 133 S.Ct. 1184 (2013) ..........................................................................8

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  -- F.R.D. --, 2014 WL 3907048 (N.D. Ill. Aug. 11, 2014) ................................................9

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*,
  259 F.R.D. 135 (N.D. Ill. 2009) ..............................................................................21

*Chesbro v. Best Buy Stores, L.P.*,
  705 F.3d 913 (9th Cir. 2012) ..................................................................................15

*Connor v. Automated Accounts, Inc.*,
  202 F.R.D. 265 (E.D. Wash. 2001) ..........................................................................20

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..................................................................................12

*Erica P. John Fund, Inc. v. Haliburton*,
  —U.S.—, 131 S.Ct. 2179 (2011) ...........................................................................8

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 C 5953, 2009 WL 2581324G.M. (N.D. Ill. Aug. 20, 2009) ................................21

*Gragg v. Orange Cab Co., Inc.*,
  942 F. Supp. 2d 1111 (W.D. Wash. 2013) .................................................................18

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................................11, 12

*Heastie v. Cmty. Bank of Greater Peoria*,
  125 F.R.D. 669 (N.D. Ill. 1989) ..............................................................................10

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ..................................................................................8, 10

*Joint Equity Comm. of Investors of Real Estate Partners v. Coldwell Banker
    Real Estate Corp.*,
    281 F.R.D. 422 (C.D. Cal. 2012)................................................................................17

*Kavu, Inc. v. Omnipak Corp.*,
    246 F.R.D. 642 (W.D. Wash. 2007) .............................................................................9

*Knutson v. Schwan's Home Serv., Inc.*,
    No. 3:12-cv-0964, 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) ....................................9

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292, 2014 WL 1256035 (D. Nev. March 26, 2014)........9, 11, 14, 17, 19

*Lerwill v. Inflight Motion Pictures*,
    582 F.2d 507 (9th Cir. 1978) .....................................................................................13

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ................................................................................8, 17

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...................................................................................20

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) .................................................................................9

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,
    268 F.R.D. 670 (W.D. Wash. 2010) .............................................................................9

*Meilleur v. AT&T, Inc.*,
    No. C11-1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) .........................15

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ...................................................................................19

*Mitchem v. Ill. Collection Serv., Inc.*,
    271 F.R.D. 617 (N.D. Ill. 2011) ..................................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...................................................................................................21

*Stemple v. QC Holdings, Inc.*,
    No. 12-cv-01997-AS(WVG), 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ...................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Stern v. DoCircle, Inc.*,
    No. 12-cv-2005, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014) ........................................11

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ........................................................................................10

*Texas v. Am. Blastfax, Inc.*,
    164 F. Supp. 2d 892 (W.D. Tex. 2001) ........................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ..................................................................................................10

*Whitaker v. Bennett Law, PLLC*,
    No. 13-cv-3145-L(NLS), 2014 WL 5454398 (S.D. Cal. Oct.
    27, 2014) ...............................................................................9, 11, 12, 13, 14

## STATE CASES

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wn.2d 778, 719 P.2d 531 (1986) ..........................................................................18

## FEDERAL STATUTES

47 U.S.C. § 227(b)(i)(A)(iii) ...............................................................................................19

47 U.S.C. § 227(b)(i)(B)......................................................................................................19

## STATE STATUTES

RCW 19.86.020....................................................................................................................18

RCW 19.86.090....................................................................................................................18

RCW 80.36.400(1)(b)..........................................................................................................15

RCW 80.36.400(2) .......................................................................................................14, 16

RCW 80.36.400(3) ..............................................................................................................17

## FEDERAL RULES

47 CFR § 64.1200(a) ...........................................................................................................19

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Fed. R. Civ. P. 23(a) .............................................................................................8

Fed. R. Civ. P. 23(a)(1) .........................................................................................9

Fed. R. Civ. P. 23(a)(2) .......................................................................................10

Fed. R. Civ. P. 23(a)(3) .......................................................................................11

Fed. R. Civ. P. 23(a)(4) .......................................................................................12

Fed. R. Civ. P. 23(b)(3) .............................................................................8, 13, 20

Fed. R. Civ. P. 23(c)(2) .......................................................................................21

Fed. R. Civ. P. 23(g)(1) .......................................................................................22

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# I.    INTRODUCTION

Defendants Appstack, Inc. ("Appstack"), Steve Espinosa, and John Zdanowski (together "Defendants") systematically violated the Washington Dialing and Answering Device statute ("WADAD") and the Washington Consumer Protection Act ("WCPA") by inundating thousands of Washington small businesses with 69,130 unsolicited robocalls in an attempt to improve sales of its advertising platform.  Over the course of two months, Plaintiff Monty Booth received at least seventeen of these commercial solicitations at his place of business. Before he received these calls, Booth had no other interaction with Defendants.

Defendants also placed over 600,000 robocalls to cellular telephones nationwide without consent, violating the Telephone Consumer Protection Act ("TCPA").  Proposed plaintiffs Ricardo Macarenas and Christopher Gregory received numerous unwanted robocalls to their cellular telephones in 2013.  Like Plaintiff Booth, Macarenas and Gregory had never done business with Defendants and did not consent to receive these unwanted robocalls.[1] Messrs. Booth, Macarenas, and Gregory are not alone — Defendants' deposition testimony, discovery responses, and data received from third-party service providers reveal that 11,192 Washington small business owners and 90,163 cellular telephone owners nationwide received Defendants' relentless and unlawful automated solicitations.

Plaintiffs[2] seek to have this case certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) so that the claims of hundreds of thousands of class members may be resolved in one fair and efficient proceeding.  Certification is appropriate because there are numerous questions of law and fact common to all proposed class members that predominate over any individualized issues.  Moreover, Plaintiffs' claims and the claims of the proposed class

---

[1] Plaintiffs Macarenas and Gregory seek to join this lawsuit as named plaintiffs to represent both the WADAD and TCPA classes.  *See* Plaintiff's Motion for Leave to Amend Complaint to Add Plaintiffs Macarenas and Gregory and a TCPA Claim.

[2] Plaintiff will use "Plaintiffs" throughout this brief to refer to Mr. Booth, Mr. Macarenas, and Mr. Gregory, however, Plaintiff acknowledges that this Court has not yet allowed Mr. Macarenas and Mr. Gregory to join the lawsuit to represent the TCPA class.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

members arise out of a common nucleus of operative facts: Defendants' unlawful marketing practices.

For these reasons, Plaintiffs respectfully request that the Court certify the case as a class action; appoint Monty Booth, Ricardo Macarenas, and Christopher Gregory as the class representatives for the WADAD class; appoint Mr. Macarenas and Mr. Gregory as the class representatives for the TCPA class, appoint Terrell Marshall Daudt & Willie PLLC ("TMDW") and Dan Gallagher as class counsel, and authorize sending notice to the classes.

## II.      STATEMENT OF FACTS

### A.      Defendants Sold "Mobile Advertising Solutions" to Small Businesses

Defendants Stephen Espinosa, John Zdanowski, and AppStack, Inc. sold a "mobile marketing solution" to small businesses. Ex. 1 at 20:15 – 21:10; Ex. 2 at 19:20 – 20:22. Defendants created "mobile websites," which were websites "optimized" for use with mobile devices like cell phones. *See* Ex. 1 at 21:4–10 ("So if you were to take a regular old website and put it on your mobile device, it wouldn't look very good.  We would provide [small businesses] with a website that was optimized for that screen").  Defendants then created an advertising campaign for their customers called "Ad Words" that had the "goal of driving customers to the small business through phone calls." *Id.* at 20:17 – 21:3.

Defendants Espinosa and Zdanowski founded Appstack in June 2011. Ex. 2 at 18:21 – 19:3.  Defendant Espinosa served as Appstack's Chief Executive Officer and Defendant Zdanowski served as Appstack's CFO. Ex. 2 at 17:10–11; 44:6–18.  According to Appstack's former chief operations manager Peter Ricci, Appstack's sales division, which ran Appstack's telemarketing efforts, reported directly to Espinosa. Ex. 1 at 32:8 – 34:16.  Nathan Moore, who served as "operations manager" at Appstack, confirmed that Espinosa made the "final decisions" regarding Appstack's marketing. Ex. 2 at 43:17 – 44:18.

Defendant Zdanowski also was involved in marketing decisions, albeit on a higher level.  According to Mr. Moore, Zdanowski "weighed in" on marketing decisions and "had a

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  role of sure, go ahead.  Or go ahead and do it.  It sounds like a good idea.  It is not a good idea,

2  that kind of role."  Ex. 2 at 43:17 – 44:18.  Zdanowski reviewed and approved the contract that

3  Defendants entered into with "inContact," the vendor that Defendants retained to place

4  robocalls to potential clients.  Ex. 3 at 54489; Ex. 4.  He also reviewed and authorized payment

5  of the inContact invoices and used his personal credit card to pay these invoices.  *See* Ex. 1 at

6  46:19–21; Ex. 5 at 54455.

7          According to Mr. Ricci, Defendants Espinosa and Zdanowski both were involved in

8  conversations regarding Appstack's compliance with the TCPA and analogous state laws.  Ex.

9  1 at 33:2–17.  Defendants' records show that Zdanowski was well aware of the risks associated

10  with failing to comply with telemarketing laws.  Ex. 6 at 54525.  Both Zdanowski and Espinosa

11  were copied on emails regarding complaints relating to their telemarketing practices, including

12  the use of an autodialer and prerecorded voice messages.  *See* Ex. 7 (discussing complaints

13  regarding automated calls); Ex. 1 at 84:15 – 85:1 (confirming that both Espinosa and

14  Zdanowski were on the email distribution list entitled leadership@appstack.com).

15  **B.      Defendants Placed Millions of Unsolicited Robocalls Advertising Their Services to Potential Customers**

16
17          1.      Defendants Used an Automatic Dialing and Announcing Device to Place the Robocalls

18          In March 2013, Defendants started using an automatic dialing and announcing device

19  ("the dialer") to robocall their primary marketing target—small businesses.  Ex. 8; Ex. 9 at

20  8:20–24 (acknowledging that calls were made "for marketing purposes to promote Appstack's

21  product"); Ex. 10 at 5 (admitting that they used an automatic dialing and announcing device to

22  promote its products and services); Ex. 4 at 54444 (stating that the dialer is "clearly working"

23  because Appstack has increased sales from 34 in a week to 61 while using less staff).

24  Defendants contracted with vendor "inContact" to obtain the dialer and set up a marketing

25  system.  Ex. 11.  The contract included, among other things, the dialer and voice recording.  *Id.*;

26  *see also* Ex. 8.

27

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

To make the robocalls, Defendants obtained "business lead lists" from a third-party vendor, SalesGenie, which maintains a database of contact information for millions of businesses.  Ex. 1 at 54:5 – 55:15; Ex. 13 at 15:22 – 16:03.  The lists Defendants obtained included names, addresses, telephone numbers, and descriptions of the "type" of business listed.  Ex. 14.  Defendants could choose the state or states that they wanted to target as well as the type of businesses.  Ex. 12.  Defendants loaded telephone numbers from these lists into the dialer.  Ex. 1 at 66:15 – 67:3; Ex. 15 at 54551 (noting "30k" new leads were uploaded).  The dialer then automatically called numbers on the list and played the following recorded message when it connected:

> Google, yes Google has approved your business for a new mobile marketing system.  To take advantage of this new exciting program press one.  To be removed from the list and give the spot to your competitor, press two.

Ex. 16 at 817.  When a potential customer pressed "one" he or she was connected to a sales representative who provided information regarding Defendants' services.  *See id.*; Ex. 1 at 79:19 – 80:13; Ex. 8 at 758 – 59.  Plaintiff Booth testified that after he pressed "one" he spoke to a sales representative who provided information about Appstack products.  Ex. 17 at 48:2 – 49:1.

2.      Defendants Did Not Obtain Potential Customers' Consent Before Placing the Calls

Call recipients never consented to receive robocalls from Defendants.  Indeed, when asked during discovery whether the persons to whom Appstack placed calls ever consented to receive the calls Appstack placed, Appstack responded that customers consented to the calls after they received the calls by pressing the option for more information.  Ex. 9 at 9–10.  According to its senior director Chris Fruehwald, Sales Genie also did not obtain consent to accept robocalls from the parties it included on its lead lists.  Ex. 18 at 8:12 – 9:1.  When deposed, Plaintiff Booth confirmed that he had no prior relationship or interaction with Appstack before receiving the calls.  Ex. 17 at 42:23 – 43:03.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 4
CASE NO. 2:13-cv-01533-JLR

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Not surprisingly, call recipients repeatedly complained about to Defendants about unwanted robocalls. *See* Ex. 7 at 54525 ("I am now utterly turned off by a) AppStack's repeated and unwanted targeting of my business phone despite repeated requests to get my name off the list; and b) unheard of arrogant treatment by your employees that could be described as nothing short of atrocious."); Ex. 7 at 54535 ("One of our own employees got stuck on our own call list and is annoyed by it. Can we please stop using VMB?"). Still, the calls continued. *See* Ex. 7 at 54537 ("We can not stop using VMB. It generates plenty of revenue to justify it"); Ex. 1 at 69:24 – 71:8 (defining VMB as a prerecorded message). Indeed, when Mr. Ricci expressed concern about the dialer, "upper management" told him that "if we are making sales, then, you know, let's continue [using the dialer]." Ex. 1 at 39:15 – 42:4.

3.     Defendants Robocalled Millions of Potential Customers Including Plaintiffs

Plaintiff Monty Booth owns a small law firm located in Everett, Washington, where he operates as a solo practitioner with no administrative staff. Ex. 17 at 10:07–23. Between May 3 and June 20, 2013, Booth received seventeen robocalls from Appstack on his business landline in Everett. Ex. 19 ¶ 14. Some days, he received multiple calls, up to four in a single business day. Ex. 17 at 20:07–16; 28:01–03.

Plaintiff Booth had no prior relationship with Defendants and never requested that Appstack contact him. *Id.* at 42:23 – 43:03. Just as it did for other potential customers, Defendants acquired Booth's number from the list of leads it obtained from Sales Genie. Ex. 14. And, as with potential customers, Defendants called Booth using the automatic dialer and played a solicitation message. Ex. 17 at 32:3–6; 48:2– 11. After receiving the calls, Plaintiff Booth contacted counsel because he "wanted the harassment to stop." *Id.* at 36:22 – 37:2.

Defendants also placed unsolicited robocalls to potential customers' cellular telephones, including Washington residents Ricardo Macarenas and Christopher Gregory. *See* Macarenas Decl. ¶ 6; Gregory Decl. ¶ 6. Plaintiff Booth has filed a motion for leave to amend to add Mr.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Macarenas and Mr. Gregory as named plaintiffs and seek their appointment as class representatives of both the Washington class and a national class seeking statutory damages under the TCPA.  Both Mr. Macarenas and Mr. Gregory understand the responsibilities of being a class representative and are willing and able to perform them.  *See* Macarenas Decl. ¶ 8; Gregory Decl. ¶ 9.

Plaintiffs were not alone.  As explained in more detail below, Plaintiffs' expert has determined that during the time they used the dialer, Defendants placed 3,843,080 robocalls to 571,914 unique numbers nationwide, including 601,207 calls to 90,163 unique cellular telephones, and 69,130 calls to 11,192 unique telephone numbers in Washington State. Declaration of Jeffrey A. Hansen ("Hansen Decl.") ¶ 12.

**C.     Class Members Can Be Identified Using Defendants' Call Records, Reverse Look-Up Directories, and Billing Records**

Defendants' call records contain detailed information about each call made by the dialer, including the number it called, the date called, call start time, the length of the call, and the originating number.  Ex. 14.  Plaintiffs initially retained call data expert, Jeffrey A. Hansen, to analyze and evaluate Defendants' call data to determine (1) the total number of calls that Defendants made to landlines and cellphones respectively; and (2) the total number of unique landline and cellphone numbers that were called both nationally and statewide.  Hansen Decl. ¶ 4, Ex. 2.  Plaintiffs subsequently asked Mr. Hansen to provide a method for identifying the physical location or termination point of a call made to telephones other than hardwire landlines; and (2) reanalyze the call data to exclude those calls that do not appear to have been answered and where no voice mail message was left.  *Id.* ¶ 5.

The following chart summarizes Mr. Hansen's conclusions regarding the total number of calls that Defendants placed after Mr. Hansen excluded calls where the duration of the call indicated that it was likely the call was not answered and no recorded voice message was left:

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

| | LANDLINES | CELLULAR | TOTAL |
|---|---|---|---|
| Nationwide Total Calls Made | 3,241,873 | 601,207 | 3,843,080 |
| Nationwide Unique Numbers Called | 481,751 | 90,163 | 571,914 |
| Average Call Per Unique Number | 6.7 | 6.7 | 6.7 |
| Washington Total Calls Made | 53,665 | 15,465 | 69,130 |
| Washington Unique Numbers Calls | 8,861 | 2,331 | 11,192 |
| Average Call Per Unique Number | 6.1 | 6.6 | 6.2 |

The above chart only includes calls placed to numbers with Washington area codes. Because some types of phone numbers are portable (i.e., cellular telephones, soft phones, and VOIP (voice over internet protocol)), the area code alone may not indicate whether the call was physically received in Washington.  Hansen Decl. ¶ 7.  However, according to Mr. Hansen, the physical location of where a call terminated can be determined through a two-step process.  *Id.* ¶ 8.  First, using a "reverse look-up directory" the address for the business associated with the phone can be determined.  *Id.* ¶ 9–10.  Second, the billing records of the identified businesses can be reviewed to determine the physical location of the telephone when it was answered.  *Id.*

### III.    THE PROPOSED CLASSES

Plaintiffs seek to certify a Washington class defined as:

> All Washington businesses who received one or more telephone calls made by Defendants and/or made on Defendants' behalf using an automatic dialing and announcing device, when such a call included a pre-recorded message containing a commercial solicitation and was transmitted to a telephone number with a Washington State area code at any time for the period that begins four years from the date of this Complaint to trial.

Plaintiffs Macarenas and Gregory seek to certify a national class defined as:

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2

3

> All persons or entities in the United States who, on or after four years before the filing of this action, received a call on their cellular telephone line with a pre-recorded message, made by or on behalf of Defendants, and without the recipient's express prior consent.

4   Excluded from the classes are Defendants, any entity in which Defendants have a

5   controlling interest or that has a controlling interest in Defendants, and Defendants' legal

6   representatives, assignees, and successors.  Also excluded are the judge to whom this case is

7   assigned and any member of the judge's immediate family.

8   ### IV.    ARGUMENT AND AUTHORITY

9   **A.    Plaintiffs Satisfy the Standards for Class Certification**

10   To achieve certification, a proposed class must meet the four threshold requirements of

11   Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of

12   representation.  Fed. R. Civ. P. 23(a); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir.

13   2013).  In the present case, Plaintiffs seek certification under Rule 23(b)(3), which requires that

14   "questions of law or fact common to class members predominate over any questions affecting

15   only individual members, and that a class action is superior to other available methods for fairly

16   and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Erica P. John Fund,*

17   *Inc. v. Haliburton*, —U.S.—, 131 S.Ct. 2179, 2184 (2011).  Although in some cases the court

18   may have to "probe behind the pleadings" to determine whether the plaintiffs have met the

19   requirements of Rule 23, "[m]erits questions may be considered to the extent—but only to the

20   extent— that they are relevant to determining whether the Rule 23 prerequisites for class

21   certification are satisfied."  *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, — U.S.—,

22   133 S.Ct. 1184, 1194–95 (2013) (citations omitted); *see also Jimenez v. Allstate Ins. Co.*, 765

23   F.3d 1161, 1166, n.*5 (9th Cir. 2014).

24   Courts in the Ninth Circuit and elsewhere frequently certify classes involving unlawful

25   robocalls.  *See, e.g., Whitaker v. Bennett Law, PLLC,* No. 13-cv-3145-L(NLS), 2014 WL

26   5454398, at *7 (S.D. Cal. Oct. 27, 2014) (certifying class of individuals to whom automated

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  debt collection calls were placed to cellular telephones); *Stemple v. QC Holdings, Inc.*, No. 12-

2  cv-01997-AS(WVG), 2014 WL 4409817, at *10 (S.D. Cal. Sept. 5, 2014) (certifying Rule

3  23(b)(3) class of individuals who were called by defendant for the purpose of collecting a

4  debt); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 2014 WL 1256035, at *10 (D.

5  Nev. March 26, 2014) (certifying nationwide class of individuals who allegedly received text

6  messages in violation of the TCPA); *Birchmeier v. Caribbean Cruise Line, Inc.*, -- F.R.D. --,

7  2014 WL 3907048, at *13 (N.D. Ill. Aug. 11, 2014) (certifying two litigation classes for

8  automated calls made to either a cellphone or landline that advertised free cruises in exchange

9  for participation in various surveys); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289

10  F.R.D. 674, 693 (S.D. Fla. 2013) (certifying a litigation class comprising of all Florida

11  residents who had received an automated telephone call on their cellphone seeking to collect an

12  alleged medical debt); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964, 2013 WL

13  4774763, *11 (S.D. Cal. Sept. 5, 2013) (certifying class of persons who received autodialed

14  calls with a prerecorded message on their cell phones); *Agne v. Papa John's Int'l, Inc.*, 286

15  F.R.D. 559, 572 (W.D. Wash. 2012) (certifying litigation class of cell phone owners who

16  received text messages promoting the defendant's pizza products); *Mitchem v. Ill. Collection

17  Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying litigation class consisting of all

18  persons who received a prerecorded voice message seeking to collect debt for medical services

19  on their cellphones).

20         1.    <u>The Numerosity Standard is Met</u>

21         The numerosity requirement is met when "the class is so numerous that joinder of all

22  members is impractical."  Fed. R. Civ. P. 23(a)(1).  Numerosity has been held presumptively

23  satisfied when a proposed class comprises forty or more members.  *See McCluskey v. Trs. of

24  Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673–74 (W.D. Wash.

25  2010).  Classes that number in the thousands typically satisfy this requirement.  *Kavu, Inc. v.

26  Omnipak Corp.*, 246 F.R.D. 642, 646–47 (W.D. Wash. 2007) (finding numerosity requirement

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

satisfied in TCPA junk fax case involving the transmission of 3,000 unsolicited faxes); *Agne*, 286 F.R.D. at 567 (finding class of 68,000 class members satisfied numerosity standard); *Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989) (recognizing that classes numbering in the thousands "clearly" satisfy the numerosity requirement).

Plaintiffs' proposed Washington class includes 11,219 unique Washington small businesses who received calls from Defendants.  Hansen Decl. ¶ 12.  Plaintiffs' national class includes 90,163 members.  *Id.*  Numerosity is satisfied.

2.      The Commonality Standard is Met

The second threshold to certification requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy this element, the plaintiff must allege a "common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  In other words, "[w]hat matters to class certification is not the raising of common 'questions' — even in droves — but rather, the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation.  *Id.*  (internal marks and citation omitted; emphasis in original); *see also Jimenez*, 765 F.3d at 1165 (noting commonality does not turn on the number of common questions, but on their "relevance to the factual and legal issues at the core of the purported class' claims").  A "single *significant* question of law or fact" satisfies the commonality requirement.  *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quotation omitted and emphasis in original).

Courts routinely find commonality where the class's claims arise from a uniform course of conduct on the part of the defendant.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (finding that "where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question"); *see also Agne*, 286 F.R.D. at 567 (recognizing that where the plaintiff alleged that "all class members

were sent substantially similar unsolicited text messages by the same defendants, using the same automatic dialing technology, commonality is satisfied").

The essence of Plaintiffs' claims is that Defendants used an autodialer to place thousands of commercial solicitations to the class members without their consent in violation of the WADAD and the TCPA.  Determining liability on these claims raises numerous common questions of law and fact, including: (1) whether Defendants used an autodialer to send commercial solicitations to Washington residents in violation of the WADAD; (2) whether Defendants used an autodialer to send commercial solicitations to class members' cell phones in violation of the TCPA; (3) whether the calls at issue constitute commercial solicitations within the meaning of the WADAD and TCPA; (4) whether class members consented to receiving the solicitations at issue; and (5) whether Defendants Espinosa and Zdanowski are vicariously liable for Appstack's conduct.  *See Whitaker*, 2014 WL5454398 at *5 (holding commonality satisfied where the core issue was whether the defendant used an ATDS or prerecorded or artificial voice to make unsolicited calls); *Kristensen*, 2014 WL 1256035 at *8 (finding vicarious liability issues satisfied commonality because the issue "turns on the federal common law of agency and can arise from actual authority, apparent authority, or ratification" a determination of which will depend on the defendants' conduct rather than class members); *Stern v. DoCircle, Inc.*, No. 12-cv-2005, 2014 WL 486262, at *4 (C.D. Cal. Jan. 29, 2014) (finding consent is a legal issue common to all class members).  Due to the numerous common questions of law and fact among the proposed classes, the commonality requirement is satisfied.

       3.      The Typicality Standard is Met

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

typicality is whether the other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).  "The Ninth Circuit does not require the named plaintiff's injuries to be identical with those of the other class members, but only that the unnamed class members have injuries similar to those of the named plaintiff's and that the injuries result from the same injurious course of conduct."  *Hanon*, 976 F.2d at 666 (question and internal marks omitted).

Courts have found typicality where, as here, a defendant's practice of making the same unsolicited contact to plaintiff and the proposed class formed the basis of the class's claim.  *See Whitaker*, 2014 WL 5454398 at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne*, 286 F.R.D. at 569 (recognizing that the plaintiff's claims were typical where they arose from the same marketing campaign and were executed in the same manner as other class members).

In this case, Plaintiffs' claims are premised on precisely the same conduct as the claims of the members of the proposed classes.  Plaintiffs and proposed class members each received ADAD calls from Defendants, each call was made with the same technology, included a prerecorded message, and was made for the purpose of soliciting business.  Thus, Plaintiffs' claims under the WADAD arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as the claims of the proposed Washington class.  Accordingly, the typicality requirement is satisfied.  The same is true for Mr. Mascarenas, Mr. Gregory, and the proposed national class.

### 4. The Class is Adequately Represented

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). This factor has two components.  First, the named representatives must appear able to prosecute

1   the action vigorously through qualified counsel, and second, the representatives must not have

2   antagonistic or conflicting interests with the unnamed members of the class. *Lerwill v. Inflight*

3   *Motion Pictures*, 582 F.2d 507, 512 (9th Cir. 1978).

4          Here, Plaintiffs have the same interests as the proposed class members— all have

5   received robocalls from Defendants without their request.  Plaintiff Booth already has actively

6   participated in the litigation by responding to discovery, appearing at a deposition, and

7   otherwise assisting counsel in their prosecution of this case.  Mr. Mascarenas and Mr. Gregory

8   understand the responsibilities of a class representative and are willing and able to actively

9   participate in the action.  Mascarenas Decl. ¶ 8; Gregory Decl. ¶ 9.  Plaintiffs do not have any

10  interests that are antagonistic to the interests of the proposed class.

11         Proposed class counsel regularly engage in major complex litigation, and have

12  extensive experience in consumer class action lawsuits involving automated calling.  Terrell

13  Decl. ¶¶ 2–5, 13–14.  Proposed class counsel have been appointed as class counsel in many

14  complex consumer class actions and have been appointed as class counsel for numerous cases

15  litigating violations of federal and state laws regulating automated calling.  *Id*.  Thus, the

16  adequacy requirement is satisfied.  *See, e.g., Whitaker*, 2014 WL 5454398 at *6 (finding

17  adequacy satisfied where plaintiff's counsel served as counsel for "various successful TCPA

18  actions in the past").

19  **B.      Plaintiffs Satisfy the Requirement of Rule 23(b)(3)**

20         Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact

21  common to the members of the class predominate over any question affecting only individual

22  members, and . . . a class action is superior to other available methods for the fair and efficient

23  adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  For the reasons set forth below,

24  Plaintiffs satisfy these requirements.

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

### 1.   Common Issues Predominate

The Ninth Circuit recently noted that "[a] principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation." *Abdullah*, 731 F.3d at 963–64 (quotation and internal marks omitted).  Therefore, "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.*; *see also Kristensen*, 2014 WL 1256035 at *8 (noting "[t]he focus [of the predominance inquiry] is on the relationship between the common and individual issues") (citation omitted); *Whitaker*, 2014 WL 5454398 at *6 (holding predominance satisfied where the claims were brought pursuant to the TCPA, which the court defined as a "narrow statute with explicit confines defining both liability and available damages").

Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Abdullah*, 731 F.3d at 964.  The focus of this case is on common legal and factual questions regarding the lawfulness of Defendants' commercial solicitations.  The company's widespread course of conduct raises questions that are common to the classes and that predominate over any questions affecting only individual members, making certification under Rule 23(b)(3) appropriate for each of Plaintiffs' claims.

### a.   *WADAD claim*

The elements of Plaintiffs' WADAD claim are threefold.  At trial, Plaintiffs must prove that Defendants: (1) used an automatic dialing and announcing device, (2) for purposes of commercial solicitation, and (3) intended the solicitations to be received by telephone customers in Washington.  *See* RCW 80.36.400(2).  In addition, Plaintiffs must establish that the individual Defendants, Steve Espinosa and John Zdanowski, are directly or vicariously liable for the unlawful calls.  All of these issues can be established for each and every class member using common proof.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Defendants have admitted that between March and November 2013 they used an automatic dialing and announcing device, which the WADAD defines as "a device which automatically dials telephone numbers and plays a recorded message once a connection is made" (RCW 80.36.400(1)(a)), to promote their products. *See* Ex. 10. Defendants' business records confirm that Defendants used an automatic dialing and announcing device to place calls to businesses and play a recorded message once a connection was made. *See* Section II.B.1. Thus, whether or not Defendants used an automatic dialing and announcing device is an undisputed and common question that can be established on a classwide basis, probably on summary judgment.

Common proof also establishes that Defendants placed the calls "for purposes of commercial solicitation." The WADAD defines "commercial solicitation" as "the unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase property, goods, or services." RCW 80.36.400(1)(b). Where calls are "aimed at encouraging listeners to engage in future commercial transactions … to purchase [a company's] goods," they constitute "commercial solicitations" for purposes of the WADAD. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 919 (9th Cir. 2012) (reversing trial court's grant of summary judgment and finding courtesy messages alerting customers that coupons entitling them to discounts on future purchases were about to expire constitute "commercial solicitations" for purposes of the WADAD); *see also Meilleur v. AT&T, Inc.*, No. C11-1025 MJP, 2011 WL 5592647, at *6 (W.D. Wash. Nov. 16, 2011) (holding an unsolicited message placed by an automatic dialing and announcing device which asks the recipient to return the call initiates a telephone conversation and therefore falls within the definition of "commercial solicitation" under RCW 80.36.400(1)(b)).

Here, Defendants have admitted that they used an automatic dialing and announcing device for the purpose of "promoting" their products. Ex. 10. The recorded message the dialer left encouraged potential customers to "take advantage" of Defendants' services by "pressing

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 15
CASE NO. 2:13-cv-01533-JLR

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

one." Ex. 16.  When potential class members pressed one, they were immediately connected to an Appstack sales representative.  *See id.*; Ex. 1 at 79:19–80:13; Ex. 8 at 758–59.  Plaintiffs' expert has identified and excluded any calls that were of such short duration that it appears the calls were not answered and the recorded message not played.  Hansen Decl. ¶ 12.

Defendants' business records further confirm that Defendants placed the autodialed calls for marketing purposes.  Section II.B.1, *supra*.  No proposed class member could have "solicited" the calls because Defendants obtained class members' contact information from a third party's calling lists which admits it had no prior existing business relationship with the numbers entered into the dialer.  *See* Ex. 18 at 8:12 – 9:1.  This common evidence establishes the "commercial solicitation" element of Plaintiffs' WADAD claim.

The third element of the WADAD claim — that the calls were intended to be received by telephone customers in Washington State — also can be established on a classwide basis using common proof.  Defendants targeted for marketing purposes brick-and-mortar businesses located within Washington State.  Ex. 12.  Call records indicate that Defendants called 11,192 numbers with Washington area codes.  Hansen Decl. ¶ 12.  Such common evidence shows that Defendants "intended" the calls to be received by telephone customers in Washington.  RCW 80.36.400(2) (providing that the statute applies "to all commercial solicitation <u>intended</u> to be received by telephone customers within the state").

To establish that they are entitled to damages, Plaintiffs and proposed Washington class members may be required to demonstrate that they physically received the unlawful calls in Washington.  This can be accomplished on a classwide basis by using "reverse look-up" directories to identify the address associated with the telephone number and then obtaining the telephone billing records from the identified businesses.  *See* Hansen Decl. ¶¶ 6–11.  Individualized proceedings are not necessary.

Finally, common proof will show that Defendants Espinosa and Zdanowski are liable — either directly or vicariously — for Defendants' unlawful conduct.  Although no court has

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

addressed whether corporate officers can be held directly liable for violations of the WADAD, under the analogous TCPA, corporate officers who directly participate in or authorize conduct that violates the TCPA may be held personally liable, even if they took the allegedly unlawful actions on behalf of the company. *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 897 (W.D. Tex. 2001) (holding corporate officers and directors personally liable for TCPA violations where they had "direct, personal participation in or personally authorized the conduct found to have violated the statute"). Here, common evidence indicates that Defendants Espinosa and Zdanowski authorized and participated in Defendants' unlawful marketing scheme. *See* Section II.A, *supra*. Thus, the issue is appropriate for class-wide adjudication.

Even if Defendants Espinosa and Zdanowski are not directly liable for violations of the WADAD, they may be "vicariously" liable. Vicarious liability "turns on the federal common law of agency and can arise from actual authority, apparent authority, or ratification." *Kristensen*, 2014 WL 1256035 at *8. Therefore, the focus at trial will be on the relationship between the defendants "without concern for any conduct by the class members." *Id.* (holding common issue of whether defendant was vicariously liable for unlawful text messages predominated at trial because the focus would be on defendants' post-message behavior); *see also Joint Equity Comm. of Investors of Real Estate Partners v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 433–34 (C.D. Cal. 2012) (holding common issues of vicarious liability predominated where individuals subsequently ratified unlawful practices).

The above common liability issues predominate over any individualized issues, of which there are none, because they focus on Defendants' conduct. As for damages, the WADAD provides that "damages to the recipient of commercial solicitations made using an automatic dialing and announcing device are five hundred dollars." RCW 80.36.400(3). Therefore, calculating damages will involve simply adding up the number of calls and multiplying the number by $500. In such circumstances, certification is appropriate. *Leyva*, 716 F.3d at 513 (holding district court abused its discretion by denying certification on the

1   ground that individual damages calculations predominated over common liability questions

2   where damages could be mechanically calculated based on available records).

3               b.      *CPA claim*

4   Washington's Consumer Protection Act ("CPA") provides that "[u]nfair methods of

5   competition and unfair or deceptive acts or practices in the conduct of any trade or commerce

6   are … unlawful.  RCW 19.86.020.  Any person "who is injured in his or her business or

7   property" may bring a CPA claim.  RCW 19.86.090.  To prevail, a plaintiff must show:  (1) an

8   unfair or deceptive act or practice; (2) in trade or commerce; (3) that impacts the public

9   interest; (4) which causes injury to the party in his business or property; and (5) which injury is

10  causally linked to the unfair or deceptive act.  *See Hangman Ridge Training Stables, Inc. v.*

11  *Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531, 535 (1986).  A person who establishes a

12  CPA claim is entitled to, among other things, the costs of bringing the suit, including

13  reasonable attorneys' fees.  RCW 19.86.090.  A statute may expressly provide that a violation

14  of the statute automatically satisfies some or all of the five CPA elements.  *See id.* at 536.

15  The WADAD provides that "[a] violation of this section is a violation of [Washington's

16  Consumer Protection Act] chapter 19.86 RCW."  A WADAD violation per se establishes all

17  five elements of a CPA claim.  *See Gragg v. Orange Cab Co., Inc.*, 942 F. Supp. 2d 1111,

18  1117–18 (W.D. Wash. 2013) (citing the WADAD language as an example of how the

19  legislature can ensure that a statutory violation will per se establish all five elements of a CPA

20  violation).

21  Because a WADAD violation constitutes a per se violation of the CPA, Plaintiffs' CPA

22  claim does not raise any unique individualized issues that will predominate at trial.  If Plaintiffs

23  prove a violation of the WADAD, then they will have proved their CPA claims and will be

24  entitled to the reasonable fees and costs they incur in bringing the action.

25

26

27

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 18
CASE NO. 2:13-cv-01533-JLR

1

        c.      *TCPA claim*

2       To prevail on their TCPA claim, Mr. Macarenas and Mr. Gregory must establish (1) a

3   telephone call, (2) using an automatic telephone dialing system or an artificial or prerecorded

4   voice, (3) to any cellular or residential telephone service.  *See* 47 U.S.C. § 227(b)(i)(A)(iii); 47

5   U.S.C. § 227(b)(i)(B) and 47 CFR § 64.1200(a)(1)(iii); 47 CFR § 64.1200(a)(2).  Each of these

6   elements can be established using common evidence.  Defendants have admitted they used an

7   automatic telephone dialing system or an artificial or prerecorded voice to place calls to phone

8   numbers with Washington area codes.  Ex. 10.  Call records indicate that Defendants placed

9   hundreds of thousands of calls to cellular telephones nationwide.  Hansen Decl. ¶ 12.  The

10  common issue that will predominate at trial is whether Appstack violated the TCPA by placing

11  these calls and whether Defendants Espinosa and Zdanowski can be held directly or vicariously

12  liable for the violations.  *See Kristensen*, 2014 WL 1256035 at *8.

13      Unlike other TCPA cases, individualized issues of whether potential national class

14  members "consented" to receive the calls will not predominate.  The Ninth Circuit has held that

15  in the absence of any evidence of consent by the defendant, consent is a common issue with a

16  common answer.  *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1042 (9th Cir.

17  2012).  "[C]ourts should ignore a defendant's argument that proving consent necessitates

18  individualized inquiries in the absence of any evidence that express consent was actually

19  given."  *Kristensen*, 2014 WL 1256035, at *9 (citing *Meyer*).  No evidence exists that even a

20  single class member consented to receive the calls at issue in this case.  To the contrary,

21  common evidence shows that Defendants called people on lists that had been compiled by third

22  party Sales Genie which does not verify consent during its data-gathering process.  *See* Ex. 18

23  at 8:12 – 9:01.  Thus, common issues predominate with respect to Plaintiffs' TCPA claims.  *See*

24  *Agne*, 286 F.R.D. at 569 (holding bare assertion of individualized issues of consent

25  unsupported by a single document was insufficient to defeat predominance).

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

2.    A Class Action Is Superior

2

The Court should certify the classes if it finds that a "class action is superior to other

3

available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

4

23(b)(3).  "A class action may be superior if class litigation of common issues will reduce

5

litigation costs and promote greater efficiency, or if no realistic alternative exists."  *Connor v.*

6

*Automated Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001).  A court must, in terms of

7

fairness and efficiency, balance the merits of a class action against those of available

8

alternatives methods of adjudication.  *See id.*

9

Given the large number of class members, the small dollar value of their individual

10

claims, and the multitude of common issues present, use of the class action device is the most

11

efficient and fair means of adjudicating the claims that arise out of Defendants' common course

12

of unlawful telemarketing.  Class treatment is superior to multiple individual suits or piecemeal

13

litigation because it conserves judicial resources and promotes consistency and efficiency of

14

adjudication.  Additionally, it is likely that most class members lack the resources necessary to

15

seek individual legal redress for Defendants' misconduct and, without class treatment, would

16

have no effective remedy for their injuries.  *See Local Joint Exec. Bd. of Culinary/Bartender*

17

*Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving

18

"multiple claims for relatively small individual sums" are particularly well suited to class

19

treatment).  Indeed, the attorneys working for Plaintiffs have had to spend hundreds of hours

20

and thousands of dollars in expert fees obtaining the evidence necessary to prove that

21

Defendants have engaged in unlawful conduct and that the victims of Defendants' unlawful

22

practices can be identified manageably from call records and other objective evidence.

23

3.    This Case Is Manageable

24

One of the elements for determining the superiority of a class action in a particular case

25

is manageability.  *See* Fed. R. Civ. P. 23(b)(3).  Because common issues predominate and

26

individualized issues are absent, the trial of this action will be easily managed by the Court.

27

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 20
CASE NO. 2:13-cv-01533-JLR

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    Plaintiffs will present generalized evidence of Defendants' common courses of unlawful

2    conduct and the total number of robocalls received by class members.  Defendants, of course,

3    will have the opportunity to demonstrate that their common courses of conduct did not violate

4    the law.

5    **C.      Constitutionally Sound Notice Can Be Provided to Class Members**

6           To protect the rights of absent class members, the Court must provide them with the

7    best notice practicable when it certifies a class under Rule 23(b)(3).  Fed. R. Civ. P. 23(c)(2).

8    The best practicable notice is that which is "reasonably calculated, under all the circumstances,

9    to apprise interested parties of the pendency of the action and afford them an opportunity to

10   present their objections."   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314

11   (1950).

12          Here, Defendants' call data identifies the unique telephone numbers of the classes that

13   Plaintiffs seek to certify.  *See* generally Hansen Decl.  Consequently, the classes may be readily

14   identified by using "reverse look-up" technology.  *See G.M. Sign, Inc. v. Finish Thompson,*

15   *Inc.*, No. 07 C 5953, 2009 WL 2581324, *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA class

16   sufficiently identifiable because "[plaintiff] may use the log and fax numbers to 'work

17   backwards' to locate and identify the exact entities to whom the fax was sent"); *see also CE*

18   *Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009) (finding class

19   sufficiently identifiable in a TCPA fax case through reference to fax numbers on transmission

20   logs).  As a result, notice may be sent directly via First Class mail to the class members.

21          Notice can also be published on a website maintained and updated by Plaintiffs'

22   counsel.  Class members will be able to use the site to stay apprised of important dates and to

23   access the notice form and other key documents.  Together, these approaches will provide the

24   best practicable notice to the class members.  After certification is granted, Plaintiffs will

25   submit a detailed notice plan and form to the Court.

26

27

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**D.      The Court Should Appoint TMDW and Mr. Gallagher as Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

TMDW and Mr. Gallagher have diligently investigated Plaintiffs' claims and have devoted, and will continue to devote, ample time and resources to this litigation.  Terrell Decl. ¶ 15.  As discussed above, TMDW and Mr. Gallagher have considerable experience with similar class action litigation and have been appointed class counsel in analogous consumer class actions regarding the TCPA.  *See id.* ¶ 3.  TMDW and Mr. Gallagher also have an in-depth knowledge of the applicable law, having been involved both in WADAD litigation and litigation arising from violations of the TCPA.  *See id.* ¶¶ 3–5.  Accordingly, the Court should appoint Beth Terrell, Mary Reiten, and Whitney Stark of TMDW, and Daniel Gallagher of the Law Offices of Daniel Gallagher to serve as class counsel for the proposed class pursuant to Rule 23(g).

## V.      CONCLUSION

For the reasons discussed above, the requirements of Rule 23 are satisfied.  Plaintiffs respectfully requests that the Court enter an order certifying the proposed class pursuant to Rule 23(b)(3), appointing Beth Terrell, Whitney Stark, Mary Reiten and Dan Gallagher as class counsel, and ordering that notice of the action be sent to class members.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1      RESPECTFULLY SUBMITTED AND DATED this 14th day of November, 2014.

2                                      TERRELL MARSHALL DAUDT & WILLIE PLLC

3

4                            By:   /s/ Mary B. Reiten, WSBA #33623
                                    Beth E. Terrell, WSBA #26759
5                                   Email:  bterrell@tmdwlaw.com
                                    Mary B. Reiten, WSBA #33623
6                                   Email:  mreiten@tmdwlaw.com
                                    Whitney B. Stark, WSBA #46748
7                                   Email:  wstark@tmdwlaw.com
                                    936 North 34th Street, Suite 300
8                                   Seattle, Washington  98103-8869
                                    Telephone:  (206) 816-6603
9                                   Facsimile:  (206) 350-3528

10
                                    Daniel C. Gallagher, WSBA#21940
11                                  Email:  dan@nwprolaw.com
                                    GALLAGHER LAW OFFICES P.S.
12                                  10611 Battle Point Drive NE
                                    Bainbridge Island, Washington  98110
13                                  Telephone: (206) 855-9310
                                    Facsimile:  (206) 855-2878
14

15                                  *Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 23
CASE NO. 2:13-cv-01533-JLR

1

<u>CERTIFICATE OF SERVICE</u>

2

I, Mary B. Reiten, hereby certify that on November 14, 2014, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following:

5

    Anne Cohen, WSBA #41183
    Email:  acohen@smithfreed.com

6

    Gavin E. Gruber, *Admitted Pro Hac Vice*
    Email:  ggruber@smithfreed.com

7

    Legal Assistant:  Sandra Reust

8

    sandra@smithfreed.com
    SMITH FREED & EBERHARD, P.C.

9

    111 SW 5th Avenue, Suite 4300
    Portland, Oregon  97204

10

    Telephone:  (503) 227-2424
    Facsimile:  (503) 227-2535

11

12

    *Attorneys for Defendants*

13

DATED this 14th day of November, 2014.

14

                            TERRELL MARSHALL DAUDT & WILLIE PLLC

15

16

                    By:   /s/ Mary B. Reiten, WSBA #33623
                            Mary B. Reiten, WSBA #33623

17

                            Email: mreiten@tmdwlaw.com
                            936 North 34th Street, Suite 300

18

                            Seattle, Washington  98103
                            Telephone:  (206) 816-6603

19

                            Facsimile:  (206) 350-3528

20

                            *Attorney for Plaintiff*

21

22

23

24

25

26

27