HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MONTY J. BOOTH, ATTORNEY AT LAW, P.S., a Washington corporation, individually and on behalf of a class of Washington businesses similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPSTACK, INC., a Delaware corporation; STEVE ESPINOSA, individually; and JOHN ZDANOWSKI, individually,<br><br>Defendants. | NO. 2:13-cv-01533-JLR<br><br>**DECLARATION OF ANTHONY FISCHER** |

I, Anthony Fischer, declare as follows:

1. I am over the age of 18 and I make this declaration based on my personal knowledge and experience of approximately 20 years in the telecommunications industry. Attached hereto as **Exhibit A** is a true and correct copy of my current resumé.

2. I graduated from Clark College in June 1996 with two Associate of Applied Science Degrees, one in Telecommunications Engineering Technology and the other in

**ANTHONY FISCHER DECL.** - Page 1–
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

Electronics Engineering Technology. I also graduated with two certificates of competency: Telephone Technician and Novell Networking Technology.

3. After graduating from Clark College I began working for GST Telecom, which is now TW Telecom. I have been continuously employed by this company since graduating from Clark College and have been working in the telecommunications industry for approximately 20 years. Beginning in 2008, through today, my title has been "Voice Application Engineer."

4. My duties and responsibilities throughout this time period relate to various facets of the telecommunications industry. More specifically, my knowledge and experience relates to complex voice applications. In other words, I am a sales engineer whose primary job duties include but are not limited to:

- Understanding customers' voice needs and requirements;
- Understanding carrier networks and how they relate;
- Understanding current telephony environment;
- Understanding current product offerings and technical capabilities;
- Understanding high-availability and high-volume voice traffic applications, such as auto-dialers, short-duration traffic, call center traffic, and contact center traffic;
- Understanding and interpretation of customers' invoices, call-detail records, traffic reports, and auto-generated auto-dialer reports.

5. As a part of my duties and responsibilities, I am regularly tasked (on a near weekly-basis) with reviewing and analyzing call-detail records associated with and produced by various auto-dialers. Generally, the types of records produced by auto-dialers are similar in both

**ANTHONY FISCHER DECL. - Page 2–**
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

format and the types of information they contain. Typically, these records include information related to the date and time of outbound calls, to/from calling party, minutes of usage, time zones, "verticals," agent name, and telephone number(s) "dialed." Based on my review of the documents in this case, including **Exhibit B** ("inContact Scope Statement"), **Exhibit C** (APPSTK000042-APPSTK000046)[1], and **Exhibit D** (INCONTACT_001401) attached hereto, I conclude that the dialer call detail records in this case are similar to the call-detail records I regularly review. As such, they are limited in the types and amount of information they contain.

6. My understanding is that the auto-dialer in this case was provided by inContact, Inc. As part of my analysis, and for my own understanding of the product and services at issue, I researched inContact, Inc. on the internet. I learned that inContact, Inc. is a company that provides cloud contact center technology and solutions. They appear to be a "pay as you go" company. In other words, a customer can purchase software that enables them to access a hosted predictive dialer or auto-dialer (*i.e.* in the cloud) and then as business needs grow, they can layer in solutions like integrated voice response systems ("IVRs"), automated call distribution systems ("ACDs"), cloud contact center software, reporting and analytics, and even proprietary features like personal connection which places a live

---

[1] My review of the call-detail records in this case was not limited to the abbreviated documents attached as **Exhibit C** and **Exhibit D**, respectively. My review and analysis included a review of a large number of the corresponding full call-detail records associated with each of the aforementioned sets of records (*i.e.* Appstack's call-detail records and inContact's call-detail records). Due to the volume, a complete set of these documents has not been attached to this declaration but will be produced with my expert file. The documents I reviewed to support my findings and opinions in this report are: (1) the Appstack call-detail records, attached hereto as **Exhibit C**; (2) the inContact call-detail records, attached hereto as **Exhibit D**; (3) the inContact Scope Statement, attached hereto as **Exhibit B**; (4) inContact-Appstack Service Contract and invoices to Appstack, attached hereto as **Exhibit E**; and (5) my written notes, attached hereto as **Exhibit F**. All of these documents have been attached to this declaration with the exception, as set forth above, of full sets of the Appstack and inContact call-detail records which simply contain too many pages. I also reviewed inContact's website to support my findings and opinions.

**ANTHONY FISCHER DECL. - Page 3–**
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

agent on the call as soon as it is answered. With the hosted dialer software, such as the auto-dialer in this case, the customer can load scripts into the dialer, use multi-number dialing for each customer, and control what number is sent out by the dialer as caller-ID on outbound dialer calls. Based on my analysis of the pertinent case documents I was tasked to review, I have determined that the customer's (*i.e.* Appstack) invoices and service contract, attached hereto as **Exhibit E,** are consistent with a product known as a "hosted predictive dialer" and that Appstack appears to have layered in additional features, including but not limited to local access DIDs, toll free numbers, and agent hosted VoIP to the overall service package purchased from inContact.

7. For this litigation I was tasked with reviewing and assessing records and documentation related to the claims in this action including, for example **Exhibit C** and **Exhibit D** attached hereto, related to call-detail records. Specifically, reviewing records generated by the alleged auto-dialer used by Defendants in this action and determining, based on my knowledge and experience, whether using those records would permit a determination that a phone call was terminated (*i.e.* received) in the State of Washington.

8. Based on my understanding and experience, as well as a review of the relevant records provided to me, including **Exhibit B, Exhibit C,** and **Exhibit D,** I conclude to a reasonable degree of scientific certainty that the telephone numbers listed on the call-detail logs do not necessarily correlate with an outbound phone call from the auto-dialer being terminated in the State of Washington. In other words, from the relevant records in this litigation I conclude there is no way to determine whether an outbound call made by the auto-dialer was physically terminated to a service or handset (*i.e.* desk phone, cell

**ANTHONY FISCHER DECL.** - Page 4-
CASE No. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

phone, or soft phone[2]) in the State of Washington. In fact, the records do not demonstrate the outbound calls made by the auto-dialer terminate to a physical service location in the State of Washington.

9. In today's telephony environment, telecommunications carriers can provide virtual or foreign-exchange numbers that terminate on a physical circuit not located in the same market as the number plan administrator ("NPA")/number exchange ("NXX") (*i.e.* telephone number). For example, a customer in the state of New York could order Seattle, Washington associated telephone numbers (*i.e.* with a Washington State area code) that terminate to a telecommunications circuit located in the state of New York. In this example, customers utilizing an auto-dialer would have no knowledge of where the Seattle, Washington telephone numbers, once dialed, actually terminate. The auto-dialer does not have the intelligence to distinguish how the outbound call was routed through the carrier after the "dial" occurred.

10. Similarly, the auto-dialer is not intelligent enough to recognize outbound calls that go to carrier call treatment, voicemail, a forwarded end-point, calls that go unanswered and/or are abandoned by the called party. In other words, there is not enough "called party data" to determine if outbound auto-dialer calls actually physically terminated in the State of Washington.

11. To make this type of determination, for each telephone number listed on the auto-dialer's outbound call-detail records, I would need to be provided and review (at a minimum) the following documents:

---

[2] A "soft phone" refers to a program, such as Cisco IP Communicator, that runs on a desktop computer, laptop, or

**ANTHONY FISCHER DECL.** - Page 5–
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

- A list of customer names and associated telephone numbers that correspond to the outbound call-detail records;

- Billing invoices from the called party's service provider (*i.e.* telecommunications service provider, such as Verizon, etc.) detailing the telephone number, and where the telephone number physically terminates (*i.e.* carrier service location);

- A product catalog from called parties' service providers detailing availability of supported telephone numbers, such as virtual numbers, foreign exchange numbers, and out-of-market numbers; and

- Call-detail records from called parties' service provider(s) that detail the date and time of the call allegedly received from the auto-dialer.

12. These types of documents/records listed above are not associated with, or more importantly, produced by an auto-dialer. This is also true for the auto-dialer at issue in this litigation as demonstrated by **Exhibit B** and **Exhibit C** and the corresponding call-detail records.

13. Here, a review of the relevant auto-dialer records reflects this. The records contain only limited information related to the outbound call and what happened to the outbound call once the auto-dialer presented the call to the carrier for termination. The information listed above (*e.g.* carrier call-detail logs) may be available and may provide assistance with determining where a phone call terminated, however, this analysis would require an individual examination of each of the called parties' carrier call-detail logs to determine

---

tablet, that acts like a physical handset (*i.e.* desktop phone). It utilizes a USB headset plugged into the computer,

**ANTHONY FISCHER DECL.** - Page 6–
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

where the call terminated after it was "dialed" by the auto-dialer.

14. For example, once the auto-dialer presents the telephone number to the carrier for call termination a number of possibilities (none of which are recorded by the auto-dialer) can occur. These include, but are not limited to, the following:

- Call could terminate to a called parties' telecom service in a state other than Washington or could be routed over the customers' wide-area network ("WAN") for termination within the State of Washington;

- Even with a State of Washington area code/telephone number ("NPA/NXX") being dialed by the auto-dialer, the call could terminate to a forward to location (including to a soft phone) that is not located in the State of Washington; and/or

- Even with a State of Washington area code/telephone number ("NPA/NXX") being dialed by the auto-dialer, the call could be answered in a state other than Washington (*i.e.* in a state other than what the telephone number represents it to be).

15. The auto-dialer records in this case do not address any of the issues listed above relating to what happens with the call once the telephone number has been dialed by the auto-dialer.

16. In fact, telephone numbers in the current telephony environment, especially for businesses, are designed to give customers full control of outbound and inbound caller identification ("caller-ID"). Furthermore, voice applications such as voice over IP

laptop, or tablet.

**ANTHONY FISCHER DECL. - Page 7–**
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

("VoIP"), contact center applications, and outbound auto-dialer campaigns utilize telephone numbers that are provided with mobility and flexibility in mind. In other words, customers want telephone numbers that can provide a virtual presence but be physically used by the customer in any location around the United States. This design, supported by telecommunications carriers, allows for the manipulation of telephone numbers, especially with respect to caller-ID associated with the far-end (*i.e.* called party).

17. The relevant call-detail records in this action demonstrate how telephone numbers can be manipulated, for example **Exhibit C**. Based on my experience and knowledge with auto-dialers, **Exhibit C** does not appear to represent the call-detail records documenting called party information, however, it is also possible that they do. This because the "Term Number" column listed on the records in **Exhibit C**, generally, is associated with the same number being called multiple times per second on different dates and time. Generally, the dialer is scripted to dial one number then move onto the next, not repeatedly call the exact same number over and over. With this in mind, and based on my experience and knowledge of auto-dialers and the records they generate, **Exhibit C** appears, at least to some degree, to list the billing telephone number ("BTN") associated with calls being made by the auto-dialer and subsequently billed to the client (*i.e.* Appstack). The call-detail records also appear to be associated with the auto-dialer's outbound calls specifically show a billing telephone number ("BTN") in Utah, which would indicate the auto-dialer is physically located in Utah. However, the originating number is being manipulated to out-pulse a toll free telephone number, or a telephone number with an area code associated with another state (*i.e.* Texas), on the customer's

**ANTHONY FISCHER DECL.** - Page 8–
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

behalf. The "Orig Number" on the other hand, appears to demonstrate the telephone number that would be displayed at the far end (*i.e.* called party) caller-ID display. This would represent the desired call back number for the customer (*i.e.* Appstack) and would permit the far end user receiving the call to see and have a record of the calling party's "number." It is my understanding that Appstack was, at all relevant times, located in Temecula, California, however, displaying the customer's (*i.e.* Appstack) toll free number provides a way for the called party to call-back Appstack, at no charge to the called party. It would be of no benefit to the customer (*i.e.* Appstack) if the called party was not able to call-back and reach an Appstack customer service agent. It is possible that the toll free number displayed on the called party's caller-ID points to an Appstack telephone number provided on service in Temecula, California. Based on the above, I cannot determine with certainty whether the call-detail records from Appstack, such as **Exhibit C**, are actual call detail reports documenting called party information; they may be, they may not be. Even if they are in fact call-detail records indicating called party information in the "Term Number" column, they do not remedy the problems set forth above associated with determining where the call terminated once the "dial" occurred.

18. The call-detail records provided by inContact, Inc. ("inContact") do not remedy the problems set forth above either. **Exhibit D** is an example of these records. Based on my experience and knowledge with auto-dialers and the records produced by auto-dialers, the information contained in **Exhibit D** does not allow for a conclusive determination as to where the alleged auto-dialer outbound calls physically terminated. Nor does the information contained within **Exhibit D** allow for a determination of whether the telephone numbers listed with Washington State area codes are actually associated with

**ANTHONY FISCHER DECL.** - Page 9–
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

telecommunications services in the State of Washington. The reason is because of the capabilities and technologies available in the modern telephony environment, a number of which are set forth above.

19. My compensation rates for this litigation are $225/hour for work related to case reviews, document review, and meetings/calls with counsel, and $275 per hour for deposition and trial testimony.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this __3__ day of October, 2014.

By: _____
Anthony Fischer, Declarant

**ANTHONY FISCHER DECL.** - Page 10–
CASE NO. 2:13-cv-01533-JLR

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2014, I served **DECLARATION OF ANTHONY FISCHER** on:

| *Via ECF Filing* | *Via ECF Filing* |
|---|---|
| Beth E. Terrell/ Whitney Stark | Daniel C. Gallagher |
| Terrell Marshall Daudt & Willie PLLC | Gallagher Law Offices PS |
| 936 North 34th Street, Ste. 300 | 10611 Battle Point Drive NE |
| Seattle, WA 98103-8869 | Bainbridge Island, WA 98110 |
| (F) 206-350-3528 | (F) 206-855-2878 |
| Email: bterrell@tmdwlaw.com | Email: dan@nwprolaw.com |
| *Of Attorneys for Plaintiff* | *Co-Counsel for Plaintiff* |

\_\_\_\_\_ by mailing to each of the foregoing a copy thereof, placed in a sealed envelope addressed as listed above and deposited in the United States mail at Portland, Oregon, and that postage thereon was fully prepaid.

\_\_\_\_\_ by facsimile transmission to each of the foregoing of a copy thereof to the number shown above.

\_\_\_\_\_ by hand delivering to each of the foregoing a copy thereof to the address listed above.

X\_\_\_\_ by electronic means through the Court's Case Management/Electronic Case File system on the date set forth above.

Dated this 8th day of December 2014.

SMITH FREED & EBERHARD, PC

By: */s/Anne Cohen*
Anne Cohen, WSB # 41183
Email: acohen@smithfreed.com
Of Attorneys for Defendants
Appstack, Inc., Steve Espinosa and
John Zdanowski

Trial Attorney: Anne Cohen, WSB # 41183

**CERTIFICATE OF SERVICE** -1   No. 3:13-cv-01533-JLR                                                           268i74