HONORABLE JAMES L. ROBART

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MONTY J. BOOTH, ATTORNEY AT LAW, P.S., a Washington corporation, individually and on behalf of a class of Washington businesses similarly situated,

                Plaintiff,

vs.

APPSTACK, INC., a Delaware corporation; STEVE ESPINOSA, individually; and JOHN ZDANOWSKI, individually,

                Defendants.

NO. 2:13-cv-01533-JLR

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page No.**

I.  INTRODUCTION ..................................................................................................................1

II. REPLY ARGUMENT ...........................................................................................................2

    A.    The Classes Are Ascertainable ..................................................................................2

          1.    TCPA Class ....................................................................................................2

          2.    WADAD Class ..............................................................................................4

          3.    The WADAD Class Can Be Expanded to Include All Washington Residents........................................................................................................5

    B.    Common Issues Predominate ....................................................................................6

          1.    TCPA Claim ...................................................................................................6

          2.    WADAD Claims ...........................................................................................8

    C.    The Named Plaintiffs Are Typical and Adequate ..................................................10

    D.    A Class Action Trial Will Be Manageable .............................................................12

III. CONCLUSION ...................................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**TABLE OF AUTHORITIES**

**Page No.**

**FEDERAL CASES**

*Abdullah v. U.S. Sec. Assoc., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ..................................................................................................6

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012) .....................................................................................3, 4

*Charvat v. Allstate*,
    --- F. Supp. 2d ---, 2014 WL 866377 (N.D. Ill. March 5, 2014) ........................................12

*Cubbage v. Talbots, Inc.*,
    No. 09-cv-911, 2010 WL 2710628 (W.D. Wash. July 7, 2010) ..........................................5

*Gannon v. Network Tel. Servs., Inc.*,
    No. CV 12-977-RGK (PJWx), 2013 WL 2450199 (C.D. Cal. June 5, 2013) ...............4, 8

*Gene & Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ..................................................................................................8

*Hartman v. United Bank Card, Inc.*,
    No. C11–1753JLR, 2012 WL 4758052 (W.D. Wash. Oct. 4, 2012) ...............................9

*Hartman v. United Bank Card, Inc.*,
    No. 2:11-cv-1753-JLR, Dkt. # 99 (W.D. Wash. Apr. 8, 2013) ........................................9

*Hartman v. United Bank Card, Inc.*,
    291 F.R.D. 591 (W.D. Wash. 2013) ..................................................................................8, 10

*Hinman v. M & M Rental Ctr., Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) .................................................................................8

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292, 2014 WL 1256035 (D. Nev. 2014) ........................................2, 4, 7

*Meilleur v. AT&T, Inc.*,
    No. 11-cv-1025, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) ..................................5

*Meyer v. Portfolio Recovery Assocs.*, LLC,
    707 F.3d 1036 (9th Cir. 2012) .................................................................................................7

<1>
<1>

*Schwartz v. Upper Deck Co.*,
   183 F.R.D. 672 (S.D. Cal. 1999) ...................................................................................2

*Stern v. DoCircle, Inc.*,
   No. SACV 12-2005 AG (JPRx), 2014 WL 486262 (C.D. Cal. Jan. 29, 2014) .................4

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229, 232, 237 (S.D. Ill. 2011) ......................................................................8

*Xavier v. Phillip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ..........................................................................2

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ........................................................................................7

### REGULATORY AUTHORITIES

*In the Matter of Rules and Res. Implementing the Telephone Consumer Protection Act*,
   18 FCC Rcd. 14014, 2003 WL 21517853 (July 3, 2003) ............................................12

### FEDERAL STATUTES

47 U.S.C. § 227(b)(i)(A)(iii) ....................................................................................................3, 10

47 U.S.C. § 227(b)(1) .....................................................................................................................3

### STATE STATUTES

RCW 80.36.400(1)(b)(2) ................................................................................................................5

### OTHER AUTHORITIES

3 Alba Conte & Herbert Newberg,
   *Newberg on Class Actions* § 7:37 (4th ed. 2002) ..........................................................6

*Manual for Complex Litigation (Fourth)* § 21.222 (2010) ............................................................2

## I. INTRODUCTION

Defendants placed the vast majority of the unlawful calls at issue in this case — 601,207 in total — to 90,163 cellular telephone customers nationwide. These calls violated the TCPA, which unlike the WADAD, broadly prohibits using a prerecorded voice to make robocalls to telephone numbers assigned to a cellular telephone service regardless of the location of the recipient or whether the call ultimately was forwarded to a landline or some other device. The purportedly "individualized" issues that Defendants raise in their responsive briefing simply do not apply to Plaintiffs' TCPA claims and quickly reveal themselves to be red herrings.[1]

As for Plaintiffs' WADAD claims, Plaintiffs have done their homework. Defendants repeatedly assert that Defendants' <u>dialer records</u> dot not indicate the location or number at which the call ultimately was received. But the overwhelming evidence in this case establishes that other available records do. Plaintiffs retained Jeffry A. Hansen, an expert in investigating telecommunications data, to analyze electronic data relating to the calls that Defendants placed using an automatic dialer and prerecorded voice ("dialer records") and to provide a method for identifying the physical location or termination point of a call made to telephones other than hardwire landlines. He determined that telecommunications carriers ("carriers" or "service providers") retain records for land lines and cellular telephones that indicate (1) the address at which the recipient was billed for the robocall; (2) whether a call was forwarded; (3) the number to which a call was forwarded; (4) the physical location to which the call was forwarded; and (5) the location at which a cellular telephone recipient received the call. Plaintiffs can subpoena these records and present them at trial. Although routing information is not available for the likely small number of class members who received calls on VoIP phones, VoIP carriers will have billing records for their customers, which will show the billing address for the service and whether the service was billed at an address in Washington State.

---

[1] Plaintiffs have moved for leave to amend their Complaint to add TCPA claims and two named Plaintiffs who will represent both the TCPA and WADAD classes. Dkt. # 33. Defendants do not oppose Plaintiffs' motion.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 1
CASE NO. 2:13-CV-01533-JLR

1  Defendants' ascertainability and predominance challenges, which erroneously presume that
2  Plaintiffs will rely only on dialer records at trial, are meritless.

3  Plaintiffs satisfy all of the prerequisites for class certification, including numerosity,
4  commonality, typicality, and adequacy.  Plaintiffs also satisfy the certification requirements
5  under Rule 23(b)(3) because common issues predominate and the action is both manageable
6  and superior to other methods for adjudicating Class member claims.  Accordingly, Plaintiffs
7  respectfully ask the Court to grant their motion and certify the Class.

## II. REPLY ARGUMENT

### A.    The Classes Are Ascertainable

"An ascertainable class exists if its members can be ascertained by reference to objective criteria." *Manual for Complex Litigation (Fourth)* § 21.222, at 340-41 (2014); *see also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (class satisfies ascertainability requirement where membership is "determinable from objective rather than subjective, criteria") (quoting *Xavier v. Phillip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)).  "The proposed class definition should describe a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *Id.* (quotation and internal marks omitted).  Here, the class definitions satisfy these requirements.[2]

#### 1.    TCPA Class

Plaintiffs respectfully request that the Court certify a TCPA Class defined as "[a]ll persons or entities in the United States who, on or after four years before the filing of this action, received a call on their cellular telephone line with a pre-recorded message, made by or

---

[2] Defendants wrongly rely on *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999), which involved allegations that the defendant illegally inserted "chase" or "insert" cards into packages of sports cards and that such a practice constitutes an illegal lottery or gambling.  *Upper Deck*, 183 F.R.D. at 675.  The class definition was restricted to individuals who bought the sports cards "for the purpose of finding a chase card." *Id.* at 676.  Based on these facts, the court found that class membership improperly depended on a determination of the prospective class member's "state of mind" because it required a determination of the reasons that each class member purchased the cards.  *Id.* at 679–80.  By contrast, class membership in this case turns on whether a class member received a call with a prerecorded message.

on behalf of Defendants, and without the recipient's prior express consent." Dkt. # 35 at 15:1–3. [3] This definition is proper because it is based on "objective criteria" —calls from Defendants that contained a pre-recorded message, to a cellphone, within the last four years—that allow prospective class members to identify themselves as having a right to recover.

Defendants maintain the TCPA Class is not ascertainable because it is not "administratively feasible" to identify the class. Dkt. # 41 at 15:19–25. Defendants' argument fails. First, Defendants wrongly assert that the TCPA Class is not ascertainable because the Court would need to determine the "actual recipient of the call" versus the number that was dialed by the dialer. Dkt. # 41 at 20:3–13. The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (iii) to any telephone number assigned to a … cellular telephone service ….

47 U.S.C. § 227(b)(1)(A)(iii). Because TCPA liability turns on whether the dialed number was assigned to a cellular telephone service, the fact that a cell phone call ultimately was forwarded to a land line or some other device is irrelevant.

Second, the TCPA does not require recipients to be located in the United States so long as the calling party is not "outside the United States." *See* 47 U.S.C. § 227(b)(1). Appstack was a California company that retained a Utah vendor to physically place the calls. Supp. Reiten Decl., Ex. 20. No issue, let alone an individualized issue, exists.

Third, to the extent the Court determines that the "actual recipient" and his, her or its location be identified (a common legal question) carrier records will provide this information. Supp. Hansen Decl. ¶¶ 3–5. Plaintiffs can subpoena these records from the carrier and exclude any class members that the Court has determined do not have viable TCPA claims. *See Agne v. Papa John Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) (noting "[i]t is not fatal for class

---

[3] All page numbers refer to the ECF docket page number rather than the page number of the brief.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 3
CASE NO. 2:13-CV-01533-JLR

definition purposes if a court must inquire into individual records, so long as the inquiry is not so daunting as to make the class definition insufficient") (quotation omitted).

Fourth, purportedly individualized issues of consent do not defeat class certification where, as here, defendants fail to submit any evidence of consent. *See, e.g., Kristensen*, 12 F. Supp. 3d at 1307; *Agne*, 286 F.R.D. at 567-68. *Gannon v. Network Tel. Servs., Inc.*, No. CV 12-977-RGK (PJWx), 2013 WL 2450199, at *3 (C.D. Cal. June 5, 2013), does not control here. In that case, the court found that the defendants had provided evidence that a substantial number of class members consented to receive the allegedly unlawful texts and on that basis determined the class was not ascertainable. By contrast, in this case Defendants fail to set forth any evidence of consent.[4]

2.     WADAD Class

Plaintiffs also seek to certify a WADAD Class defined as: "All Washington businesses who received one or more telephone calls made by Defendants and or made on Defendants' behalf using an automatic dialing and announcing device, when such a call included a pre-recorded message containing a commercial solicitation and was transmitted to a telephone number with a Washington State area code at an time for the period that begins four years from the date of this Complaint to trial." *See* Dkt. # 35 at 14:20–24. Like the TCPA Class definition, this definition is proper because it is based on objective criteria.

Defendants misleadingly assert that the Washington Class is not ascertainable because dialer records do not contain sufficient information to ascertain the class. Dkt. # 41 at 16:18–20:17. Plaintiffs will rely on both dialer <u>and</u> carrier records to identify the Class. *See* Dkt. # 38 at 2–3. Dialer records indicate a call's duration and thus whether an actual connection was made and a prerecorded message played. *See id.* ¶ 12 (excluding calls with a duration of six seconds because such calls "indicate[] to me that no message was received by the caller").

---

[4] Purportedly individual issues of consent are more appropriately addressed under the Court's predominance inquiry. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014); *see also Stern v. DoCircle, Inc.*, No. SACV 12-2005 AG (JPRx), 2014 WL 486262, at *3 (C.D. Cal. Jan. 29, 2014) (finding argument regarding consent "is one for summary judgment").

1  Carrier records indicate the actual recipient of the call and that person's location.  *See* Supp.
2  Reiten Decl., Ex. 21 at 62:11 – 64:14; Supp. Hansen Decl. ¶¶ 3–5.[5]

3        The remaining information that Defendants maintain is necessary to identify potential
4  class members is legally irrelevant.  For example, prerecorded messages containing a
5  commercial solicitation are unlawful regardless of whether the message ultimately is received
6  by a live person or a machine—the material issue is whether the caller intended to initiate a
7  conversation with the recipient via the prerecorded message.  *Compare Meilleur v. AT&T, Inc.*,
8  No. 11-cv-1025, 2011 WL 5592647, at *6 (W.D. Wash. Nov. 16, 2011) (holding that "[a]n
9  automated call that invites the recipient to call the company responsible for the call is a
10 "commercial solicitation") *with Cubbage v. Talbots, Inc.*, No. 09-cv-911, 2010 WL 2710628
11 (W.D. Wash. July 7, 2010) (holding that a prerecorded message that merely conveyed
12 information without providing the caller with an opportunity to contact the company did not
13 violate the WADAD).  Here, Defendants do not dispute that in all cases —regardless of
14 whether an answering machine or live person received the message—Defendants played a
15 prerecorded message that asked the recipient to contact a live customer service representative
16 by pressing "1."  Even if the prerecorded message did not play in full when the answering
17 machine picked up, it played long enough to request that the listening party contact the
18 company for more information.  *See* Dkt. # 42-8 at 12:14–23 (testifying the message played
19 would ask the party to press "1" or press "2" and then would hang up if there was no response).
20 Because Defendants' conduct was uniform, individualized inquiries are unnecessary.

21       3.    <u>The WADAD Class Can Be Expanded to Include All Washington Residents</u>

22       The WADAD protects all "telephone customers" within the State of Washington; it is
23 not limited to businesses.  *See* RCW 80.36.400(1)(b)(2).  Plaintiffs restricted their Washington
24 Class definition to businesses because Defendants' corporate representatives testified at their

---

[5] Contrary to Defendants' assertions, their expert definitively testified the provider's customer service records (CSRs) do "in fact provide [him] with a list of telephone numbers and where they actually terminate." Supp. Reiten Decl., Ex. 21 at 62:1–9.  He did not qualify his testimony in any way.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 5
CASE NO. 2:13-CV-01533-JLR

depositions that Defendants purchased business leads only. *See, e.g.,* Dkt. # 36-1 at 9. To the extent Defendants also placed calls to consumers (*see, e.g.*, Dkt. # 42-7 at 16) the Washington Class can and should be expanded to include "all Washington residents." 3 Alba Conte & Herbert Newberg, *Newberg on Class Actions* ("*Newberg*") § 7:37 (4th ed. 2002) (explaining that "[t]he class definition may be the one alleged in the complaint, or the class may be redefined by the court, as appropriate").

**B. Common Issues Predominate**

"The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in this case and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Defendants ignore the common issues that Plaintiffs identified in their motion and make no attempt to analyze the relationship between these common issues and the purportedly "individualized inquiries" that Defendants identify. For each of Plaintiffs' claims, Defendants' arguments fail and predominance is satisfied.

    1. <u>TCPA Claim</u>

With respect to Plaintiffs' TCPA claim the following common issues exist: (1) whether the equipment Defendants used to place calls constitutes an automatic telephone dialing system or an artificial or prerecorded voice as defined by the statute; (2) whether Defendants used this equipment to dial numbers assigned to cellular telephone services; and (3) whether Defendants Espinosa and Zdanowski can be held directly or vicariously liable for these violations. Defendants have admitted they placed calls using a prerecorded voice (Dkt. # 36-1 at 106) and Plaintiffs' expert has determined that 601,207 of these calls were placed to 90,163 numbers assigned to cellular telephone services. *See* Dkt. # 38 at 3–4. Plaintiffs will rely on such evidence at trial to establish the first and second issues.

Defendants relegate any discussion of vicarious liability to a footnote and in the process fail to explain or provide any authority for their assertion that vicarious liability requires

individual determinations. *See* Dkt. # 41 at 8, n. 2. As the court explained in *Kristensen*, vicarious liability is appropriate for class treatment because such issues focus either on the Defendants' conduct (actual authority and ratification) or on the objective test of whether a "reasonable person" would believe that the person placing call had authority to act on behalf of the Defendants (apparent authority). *See Kristensen*, 12 F. Supp. 3d at 1306–07; *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092-93 (9th Cir. 2010) (where "objective 'reasonable person' standard" applies to determine violations of consumer protection statute, certification is appropriate). No individualized determinations will be necessary.

Defendants identify three purportedly individualized issues including (1) identifying the telephone number that actually received the call (versus the number dialed); (2) determining whether the number that actually received the call was a cellular telephone; and (3) determining whether the recipient of the call provided prior express consent. Dkt. # 41 at 29:6–11. None of these issues will predominate at trial. As noted above, the TCPA imposes liability on a caller that makes a call using a prerecorded message to a telephone number assigned to a cellular telephone service, regardless of whether the dialed number was actually received at that number or forwarded to another. Thus, Defendants' first issue is legally irrelevant and cannot predominate. Plaintiffs' expert has identified each and every unique number Defendants dialed that was assigned to a cellular phone service, 90,163 total. *See* Dkt. # 38 at 3–4, 18–19. Thus, individualized hearings are simply not necessary to identify cell phones.

As for purportedly individualized issues of consent, the Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer. *Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036, 1040–42 (9th Cir. 2012); *see also Kristensen*, 12 F. Supp. 3d at 1307 (holding individualized issues of consent did not defeat predominance where defendants failed to submit any admissible evidence showing that class members consented and the common evidence indicated that no mechanism to obtain consent existed).

Here, Defendants fail to submit evidence from a single class member indicating that that person "consented" to receive the autodialed calls at issue in this case. This is not surprising, since the calling campaigns were designed to identify new customers, not call existing ones. Moreover, Defendants concede that the "leads" they purchased from SalesGenie were derived from public sources, including telephone books, web research, 10Ks, public filings, and newspaper information. Dkt. # 41 at 28, n.12. It is highly unlikely that a person or business randomly selected from a phone book would have consented to receive calls from Appstack. *See Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) (holding individualized issues of consent did not predominate where the purchased leads were unlikely to have consented). In addition, SalesGenie representative Chad Fruehwald testified that he never obtained permission from the individuals or entities to keep them in SalesGenie's database. *See* Dkt. # 42-6 at 13. SalesGenie representative Chad Greer also testified that when he compiled the list 15 years ago, he never asked people or entities in the database whether they consented to receive robocalls and he did not know whether the company asked this question today. *See* Dkt. # 42-5 at 10:10–19. Because no evidence of consent exists, any "individualized" consent issues do not predominate.[6]

2.  WADAD Claims

Defendants' predominance arguments regarding Plaintiffs' WADAD claim fare no better. Relying on this Court's decision in *Hartman v. United Bank Card, Inc.* ("*Hartman III*"), 291 F.R.D. 591, 598 (W.D. Wash. 2013), Defendants maintain class certification is not

---

[6] The cases that Defendants cite in support of their consent argument are inapposite because they all involved circumstances where the defendant had presented evidence that it had obtained consent from some, if not all, of the class members. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 323 (5th Cir. 2008) (proposed class members included companies with which it or its affiliates had an established business relationship); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 232, 237 (S.D. Ill. 2011) (proposed class members included "rewards" program members who had provided the casino with their telephone number so that they could receive special offers and information about the casino); *Gannon*, 2013 WL 2450199, at *2–3 (proposed class members included individuals who may have consented because callers were explicitly informed that they may be contacted by the company at the number from which they had called and provided an opportunity to opt out of such contact).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 8
CASE NO. 2:13-CV-01533-JLR

appropriate because individualized inquiries will be required to determine whether a class member was located in Washington at the time he or she answered the call. Dkt. # 41 at 26–28.

*Hartman* involved allegations that a credit card company's agents used an automatic dialing and announcing device to place calls containing a prerecorded commercial solicitation to potential customers in Washington State. *Hartman v. United Bank Card, Inc.* ("*Hartman I*"), No. C11–1753JLR, 2012 WL 4758052, at *3 (W.D. Wash. Oct. 4, 2012). Unlike this case, different messages were played depending on whether a live person or machine answered the call. *Id.* at *2. If a live person answered the call, the message simply stated "oops wrong number." *Id.* If an answering machine or voicemail service picked up, the prerecorded message asked the recipient to call the defendant immediately to discuss ways the defendant might assist the recipient. *Id.*

Also unlike this case, the plaintiffs in *Hartman* proposed a trial plan in which they would rely exclusively on the defendants' dialer records, which indicated the area code prefix of each dialed number, to identify calls placed to numbers in Washington. *Id.* at *3. At class certification, the defendants presented specific evidence, including testimony from a CEO indicating that the company stopped using autodialing because it could not determine with certainty where potential customers were located and documentary records that at least one number with a Washington area code was actually a business located in New Mexico. *See Hartman v. United Bank Card, Inc.* (*Hartman II*), No. 2:11-cv-1753-JLR, Dkt. # 99 at 6–7 (W.D. Wash. Apr. 8, 2013). No such evidence exists here.

Moreover, unlike *Hartman*, Plaintiffs here have proposed that the parties use reverse look-up databases to determine the address assigned to each dialed number and the service provider. Then, Plaintiffs can subpoena records from the carriers to confirm the identity and location of the person associated with the dialed number. *See* Supp. Hansen Decl. ¶ 7 (confirming the service provider associated with a number can be identified from available data). The only potential exception to this is where a call was placed to a business that uses

VoIP. Supp. Hansen Decl. ¶ 6. But even with VoIP calls the service provider records will indicate the <u>address</u> associated with the number at the time the number was called.[7] *Id.*

Unlike *Hartman*, this case does not implicate the dormant Commerce Clause. In *Hartman*, the plaintiffs argued that the WADAD covered commercial solicitations that the defendants "intended" be received by telephone customers within the state of Washington. This Court rejected this argument, reasoning that such an interpretation would render the statute unconstitutional. *Hartman III*, 291 F.R.D. at 599–600. Plaintiffs do not make the same argument. Instead, Plaintiffs have proposed to identify and exclude class members where the billing records indicate that the dialed number is associated with a telephone customer that resides outside the State and thus would not be able to recover under the WADAD. *See* Dkt. # 35 at 13–14. Because the identification process involves a straightforward, mechanical review of service provider records and such billing records can be presented at trial either through expert or records' custodian testimony, it presents no management issues at trial and is far more efficient than the hundreds of thousands of individual trials that would have to take place if class certification was denied.

Finally, as with the TCPA claim, Defendants fail to present any evidence that potential WADAD class members "consented" to the calls. Indeed, Defendants assert only that the "potential" for consent exists because the numbers were gathered from public sources. Dkt. # 41 at 28:8–10. This argument fails for the same reasons set forth above.

**C.   The Named Plaintiffs Are Typical and Adequate**[8]

Defendants do not challenge the typicality of proposed Plaintiffs Mascarenas and Gregory with respect to Plaintiffs' TCPA claim, except to characterize Plaintiffs' motion for leave to amend as "11th Hour," a gratuitous comment rendered more so in light of the fact that

---

[7] In a footnote, Defendants wrongly assert that "the same jurisdictional argument" applies to the TCPA. Dkt. # 41 at 27, n. 11. The TCPA does not require that the recipient of a call be physically present in the United States for liability to attach to calls placed by persons within the United States, which Defendants are. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

[8] Defendants assert that the named Plaintiffs are inadequate for the same reasons they are atypical. Therefore, Plaintiffs address Defendants' arguments together.

1  Defendants did not oppose Plaintiffs' amendment.  Defendants maintain that Plaintiffs have not
2  established Mascarenas and Gregory's typicality with respect to the WADAD claim because
3  "there is no evidence" that either person satisfies a number of criteria that Defendants allege are
4  necessary to recovery under the WADAD.  Dkt. # 41 at 23.  Defendants are wrong.  First,
5  Defendants' assertion that "there is no evidence" establishing that Mascarenas or Gregory's
6  cellular telephones contain a Washington State area code prefix is disingenuous in light of the
7  fact that Defendants' own records indicate that the area code associated with their phones is
8  "253."  *See* Supp. Reiten Decl., Exs. 22-23.  Second, plenty of evidence supports allegations
9  that the calls to Mascarenas and Gregory were unsolicited, including evidence that SalesGenie
10 obtained its leads through generic public sources and did not confirm that the persons on the list
11 had "solicited" calls from Defendants.  *See* Dkt. # 42-5 at 10; Dkt. # 42-6 at 13.  Third,
12 Plaintiffs have presented unrefuted evidence that the unlawful calls all played substantially the
13 same commercial solicitation.  *See* Dkt. # 35 at 10:15 – 11:17.  Defendants' dialer records show
14 that Gregory and Mascarenas received such calls.  Supp. Reiten Decl., Exs. 22-23.  Thus, their
15 claims are coextensive with the class claims.  Fourth, unlike *Hartman*, Defendants' message
16 did not vary based on whether a machine or live person answered.  No need exists to make this
17 determination.[9]

18     Defendants also wrongly assert that Plaintiff Booth's claims are not typical of the
19 WADAD Class because he "solicited future calls" from Appstack by pressing "1" and asking
20 sales representatives where they were located, what they did, and how he could get in touch
21 with the company if he was interested.  Dkt. # 41 at 22:9–20.  For purposes of the TCPA,
22 "[p]urporting to obtain consent during the [allegedly unlawful] call, such as requesting that a
23 consumer 'press 1' to receive further information does not constitute *prior* consent necessary to
24 deliver the message in the first place, as the request to 'press 1' is part of the telemarketing

---

[9] Defendants correctly note that neither Mascarenas nor Gregory are "businesses."  As described above, Plaintiffs respectfully request that the Court expand the class definition to include all Washington residents rather than just businesses.

call." *In the Matter of Rules and Res. Implementing the Telephone Consumer Protection Act*, 18 FCC Rcd. 14014 at ¶ 142, 2003 WL 21517853, at **49 (July 3, 2003) (emphasis in original). To construe the TCPA such that "consumers would forfeit the statute's protections anytime they follow an automated caller's instructions" is "inimical" to the remedial purpose of the statute. *See Charvat v. Allstate*, --- F. Supp. 2d ---, 2014 WL 866377, at *1 (N.D. Ill. March 5, 2014). This reasoning applies equally to the WADAD, which prohibits "unsolicited" autodialed calls. Defendants fail to present any evidence that Plaintiff Booth "solicited" additional robocalls; he did not. The mere fact that Plaintiff Booth followed Defendants' instructions does not render him atypical.

### D. A Class Action Trial Will Be Manageable

Plaintiffs' claims can be established using common evidence. At trial or summary judgment, Plaintiffs will establish through Defendants' own testimony, admissions and documentary records that (1) Defendants used an automatic dialing and answering device that falls within the statutory definition under the WADAD and TCPA; and (2) Defendants were directly or vicariously liable for calls placed on their behalf. Plaintiffs will rely on expert testimony and/or testimony from third party records custodians to establish the number of calls that Defendants placed to telephone numbers assigned to a cellular telephone service and the location of the calls received. *See generally* Supp. Hansen Decl. Plaintiffs also will rely on expert and record custodian testimony to establish the number of calls that Defendants placed to individuals or businesses that were received in Washington. Individualized hearings to establish liability and damages simply will not be necessary.

### III. CONCLUSION

The issues in this case are well-suited to class treatment and a class action is far superior to hundreds of thousands of individualized actions. For these reasons, Plaintiffs respectfully request that the Court grant their motion.

| | |
|---|---|
| 1 | RESPECTFULLY SUBMITTED AND DATED this 19th day of December, 2014. |
| 2 | TERRELL MARSHALL DAUDT & WILLIE PLLC |
| 4 | By:  /s/ Beth E. Terrell, WSBA #26759 |

                        Beth E. Terrell, WSBA #26759
                        Email:  bterrell@tmdwlaw.com
                        Mary B. Reiten, WSBA #33623
                        Email:  mreiten@tmdwlaw.com
                        Whitney B. Stark, WSBA #46748
                        Email:  wstark@tmdwlaw.com
                        936 North 34th Street, Suite 300
                        Seattle, Washington  98103-8869
                        Telephone:  (206) 816-6603
                        Facsimile:  (206) 350-3528

                        Daniel C. Gallagher, WSBA#21940
                        Email:  dan@nwprolaw.com
                        GALLAGHER LAW OFFICES P.S.
                        10611 Battle Point Drive NE
                        Bainbridge Island, Washington  98110
                        Telephone: (206) 855-9310
                        Facsimile:  (206) 855-2878

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on December 19, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Anne Cohen, WSBA #41183
> Email:  acohen@smithfreed.com
> Gavin E. Gruber, *Admitted Pro Hac Vice*
> Email:  ggruber@smithfreed.com
> Legal Assistant:  Sandra Reust
> sandra@smithfreed.com
> SMITH FREED & EBERHARD, P.C.
> 111 SW 5th Avenue, Suite 4300
> Portland, Oregon  97204
> Telephone:  (503) 227-2424
> Facsimile:  (503) 227-2535

*Attorneys for Defendants*

DATED this 19th day of December, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:   /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email: bterrell@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorney for Plaintiff*