UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MONTY J. BOOTH, et al., | CASE NO. C13-1533JLR |
| Plaintiffs, | ORDER |
| v. | |
| APPSTACK, INC., et al., | |
| Defendants. | |

**INTRODUCTION**

Before the court is Plaintiff Monty Booth's second motion for class certification. (Mot. (Dkt. # 53).)  This case arises out of robocalls allegedly initiated by Defendants Steve Espinosa and John Zdanowski to promote their business, Appstack, Inc. ("Appstack").  Plaintiff requests that the court certify a class asserting claims under the Washington Dialing and Announcing Device Act ("WADAD"), RCW 80.36.400. Having considered the submissions of the parties, the balance of the record, and the

//

ORDER- 1

1  relevant law, and deeming oral argument unnecessary, the court grants Plaintiff's motion

2  to certify a class.

3                                    **BACKGROUND**

4         The underlying facts are set forth in the court's March 30, 2015, order on

5  Plaintiffs' first motion for class certification.  (*See* 3/30/15 Order (Dkt. # 52) at 2-4.)  The

6  court incorporates those facts by reference here.

7         In its March 30, 2015, order, the court certified a nationwide class asserting claims

8  under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (*See* 3/30/15

9  Order at 10-27.)  The court, however, declined to certify Plaintiffs' proposed class

10 asserting claims under the WADAD for the following reasons.  (*Id.* at 28-35.)  The

11 WADAD is inapplicable to calls that are both placed and received outside the state of

12 Washington.  (*Id.* (*quoting Hartman v. United Bank Card, Inc*, 291 F.R.D. 591, 598

13 (W.D. Wash. 2013).)  It is undisputed that Appstack's robocalls originated from Utah or

14 California.  (*See* 2d. Reiten Decl. (Dkt. # 46) Ex. 20.)  Plaintiffs' proposed class

15 definition, however, included an appreciable number of members who had received calls

16 outside the state of Washington.[1]  (*See id.*)  As such, the definition was overbroad to such

17 an extent that it was unascertainable and unable to meet the requirements of typicality

18 and predominance of common issues.  (*See id.* (citing *O'Connor v. Boeing N. Am., Inc.*,

19 184 F.R.D. 311, 319 (C.D. Cal. 1998); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483

20  _____

21        [1] Specifically, Plaintiffs' proposed definition applied to calls made to phone numbers with
   Washington area codes.  (*See id.*)  Due to the popularity of mobile and VoIP phones, the court found that
22 area codes were an insufficient proxy for determining the location of a received call.  (*See* 3/30/15 Order
   at 28-35.)

ORDER- 2

1  (N.D. Cal. 2011); *Rodman v. Safeway, Inc.,* No. 11-CV-03003-JST, 2014 WL 988992, at

2  *16 (N.D. Cal. Mar. 10, 2014)).)  The court granted Plaintiffs thirty days to file a second

3  motion to certify.  (*See id.*)  Plaintiff's motion, which advances a narrower class

4  definition that does not include mobile or VoIP telephones, is now before the court.  (*See*

5  Mot.)

6  **ANALYSIS**

7  **Class Certification Standard**

8  "Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-*

9  *Mart Stores, Inc. v. Dukes*, ---U.S.---, 131 S. Ct. 2541, 2548 (2011).  Under Federal Rule

10  of Civil Procedure Rule 23(a), the party seeking certification must first demonstrate that

11  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are

12  questions of law or fact common to the class; (3) the claims or defenses of the

13  representative parties are typical of the claims or defenses of the class; and (4) the

14  representative parties will fairly and adequately protect the interests of the class." *Id.*

15  (quoting Fed. R. Civ. P. 23(a)).  "Second, the proposed class must satisfy at least one of

16  the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548; *see also Leyva v.*

17  *Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  Here, Plaintiff seeks to certify a

18  class under Rule 23(b)(3), which requires that "questions of law or fact common to class

19  members predominate over any questions affecting only individual members, and that a

20  class action is superior to other available methods for fairly and efficiently adjudicating

21  the controversy." Fed. R. Civ. P. 23(b)(3); *see also Leyva*, 716 F.3d at 512; (Mot. at 14.)

22  //

ORDER- 3

1    Rule 23 "does not set forth a mere pleading standard." *Dukes*, 131 S.Ct. at 2551.

2    Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis,

3    that the prerequisites of Rule 23(a) have been satisfied." *Id.* (internal citation omitted).

4    "[I]t may be necessary for the court to probe behind the pleadings before coming to rest

5    on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

6    This is because "the class determination generally involves considerations that are

7    enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*

8    (internal quotation omitted).  Nonetheless, the ultimate decision regarding class

9    certification "involve[s] a significant element of discretion." *Yokoyama v. Midland Nat.*

10   *Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

11       In addition to the express requirements of Rule 23, courts also require a putative

12   lead plaintiff to show that the class definition is ascertainable. *See O'Connor v. Boeing*

13   *N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  Specifically, a class definition must

14   be "precise, objective and presently ascertainable." *Id.*  "While the identity of each class

15   member need not be known at the time of certification, the class definition must be

16   definite enough so that it is administratively feasible for the court to ascertain whether an

17   individual is a member." *Id.*  "The proposed class definition should describe a set of

18   common characteristics sufficient to allow a prospective plaintiff to identify himself or

19   herself as having a right to recover based on the description." *Kristensen v. Credit*

20   *Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014).  Most importantly,

21   membership "must be determinable from objective, rather than subjective, criteria." *Id.*

22

**Proposed Class Definition**

The WADAD provides:  "No person may use an automatic dialing and announcing device for purposes of commercial solicitation."  RCW 80.36.400(2).  An automatic dialing and announcing device is defined as "a device which automatically dials telephone numbers and plays a recorded message once a connection is made."  RCW 80.36.400(1)(a).  Commercial solicitation "means the unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase property, goods, or services."  RCW 80.36.400(1)(b).  Under the WADAD, "damages to the recipient of commercial solicitations made using an automatic dialing and announcing device are five hundred dollars."[2]  RCW 80.36.400(3).

Proposed lead plaintiff, Mr. Booth, who owns a small law firm located in Everett, Washington, received 17 robocalls from Appstack on his business landline between May 3, 2013, and June 20, 2013.  (*See* Reitan Decl. (Dkt. # 36) Ex. 19, Ex. 17 ("Booth Dep.") at 10:07-23, 20:7-16, 28:1-3.)  Mr. Booth had never had any interaction with Appstack prior to receiving the first call.  (Booth Dep. at 42:23-43:43.)  Plaintiff now seeks to certify a Washington class defined as:

> All persons who received on a landline located within the State of Washington one or more pre-recorded telephone messages placed by Defendants or on Defendants behalf on or after August 27, 2009, through the date of final disposition of this action.

(*See* Mot. at 8.)

---

[2] A violation of the WADAD also constitutes a per se violation of the Washington Consumer Protection Act.  RCW 80.36.400(3); *Palmer v. Sprint Nextel Corp.*, 674 F. Supp. 2d 1224, 1228 (W.D. Wash. 2009).

ORDER- 5

To identify class members, Plaintiff examined Appstack's autodialer records and determined that calls were made to 8,861 numbers with Washington area codes.[3] (*See* 1st Hansen Decl. (Dkt. # 38) ¶¶ 2-12; 3d Reiten Decl. (Dkt. # 54) ¶ 3.)  Plaintiff then ran those numbers through a publicly available search website, which identified the type of phone service (landline, cellphone, or VoIP), service provider name, and carrier switch location associated with each number.  (3d Reiten Decl. ¶ 3, Ex. 1 (explanation of search website tools), Ex. 2 (spreadsheet identifying landlines identified by the search website).)  Based on those search results, Plaintiff identified 5,874 landlines that terminate at a carrier switch located in Washington.  (*Id.* Exs. 1, 2.)  Plaintiff intends to use reverse lookup directories to identify the businesses or individuals who own those telephone numbers.  (*See* Hoover Decl. (Dkt. # 60).)

With those facts in mind, the court addresses each class certification prerequisite in turn below.

**1.  Ascertainability**

The revised class definition satisfies the court's prior concerns concerning overbreadth.  Because the definition is limited to calls "received on a landline located within the State of Washington" (*see* Mot. at 9), there is no longer a danger of including individuals that are geographically precluded from asserting a claim under the WADAD.  Moreover, the class definition is "precise," *O'Connor*, 184 F.R.D. at 319, "determinable from objective, rather than subjective, criteria," *Kristensen*, 12 F. Supp. 3d at 1303, and

---

[3] In order to ensure that each call was connected and the autodialer's message began playing, Plaintiff selected only calls that lasted longer than 6 seconds.  (*See* 1st Hansen Decl.  ¶ 12.)

1    "describe[s] a set of common characteristics sufficient to allow a prospective plaintiff to

2    identify himself or herself as having a right to recover based on the description," *id.*  As

3    such, the definition is ascertainable.

4          Defendants attempt to argue that the definition is once again overbroad.  (*See*

5    *generally* Resp. (Dkt. # 31).)  As discussed above, any such argument is foreclosed by the

6    plain language of the definition, which limits the class to individuals entitled to assert

7    claims under the WADAD.  In reality, Defendants' objection is directed not to the class

8    definition, but rather to Plaintiff's proposed method of identifying members that meet the

9    definition.  (*See generally* Resp.); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-

10   1827 SI, 2012 WL 253298, at *3 (N.D. Cal. Jan. 26, 2012) ("[D]efendants' arguments do

11   not undermine the ascertainability of the class, which remains defined by objective

12   criteria.  Instead, defendants' arguments relate to proof of class membership, a distinct

13   concept.").  Specifically, Defendants contend that various flaws in Plaintiffs' proposed

14   methodology preclude accurate identification of members who received calls in the state

15   of Washington.  (*See* Resp. at 7-9 (pointing out that carrier switches do not necessarily

16   identify the location where a call terminates).)  "Although defendants emphasize the

17   shortcomings of the plaintiffs' methods, the [c]ourt finds that these methods make it

18   'administratively feasible for the court to determine whether a particular individual is a

19   member.'"  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 253298, at *3 (quoting

20   *O'Connor*, 184 F.R.D. at 319).  After all, "it is not fatal for class definition purposes if a

21   court must inquire into individual records, so long as the inquiry is not so daunting as to

22   make the class definition insufficient."  *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559,

1   566 (W.D. Wash. 2012); *see also Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 676

2   (N.D. Cal. 2011) (finding that reliance on checking public online databases for records

3   did not render a class unascertainable).  Moreover, courts have consistently held that the

4   potential that a small percentage of individuals may lack sufficient proof to establish

5   class membership does not preclude certification of an otherwise ascertainable class.  *See,*

6   *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 253298, at *3; *Galvan v. KDI*

7   *Distribution Inc.*, No. SACV 08-0999-JVS ANX, 2011 WL 5116585, at *5 (C.D. Cal.

8   Oct. 25, 2011); *Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2014 WL 988992, at

9   *16 (N.D. Cal. Mar. 10, 2014); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK

10  MRWX, 2014 WL 1410264, at *8 (C.D. Cal. Apr. 9, 2014).  Defendants do not establish

11  that more than a small percentage of individuals may lack sufficient proof to establish

12  class membership.

13       Therefore, the court concludes that the class is ascertainable.  Defendants'

14  arguments regarding Plaintiff's methodology go more to manageability and

15  predominance of common issues that to ascertainability.  *See Agne*, 286 F.R.D. at 566.

16  Therefore, the court will address them in greater detail when considering those

17  requirements below.

18       **2.  Numerosity**

19       "The prerequisite of numerosity is discharged if 'the class is so large that joinder

20  of all members is impracticable.'" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th

21  Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  Here, Plaintiffs put forth evidence that the

22  //

1  proposed WADAD class comprises over 5,000 members.  (1st Hansen Decl.; 3d Reiten

2  Decl. ¶ 3, Ex. 2.)  Defendants do not dispute that the class is sufficiently numerous to

3  satisfy this requirement.  (*See* Resp. at 25-26 (citing *Celano v. Marriott Int'l, Inc.*, 242

4  F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is

5  satisfied if the class comprises 40 or more members.").)  Based on the number of class

6  members implicated, the court finds that joinder of separate actions would be

7  impracticable.  *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan &*

8  *Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010).  Accordingly, this prong is met.

9       **3.  Commonality**

10      The requirement of "commonality" is met through the existence of a "common

11  contention" that is of "such a nature that it is capable of classwide resolution." *Dukes*,

12  131 S. Ct. at 2551.  A contention is capable of classwide resolution if "the determination

13  of its truth or falsity will resolve an issue that is central to the validity of each one of the

14  claims in one stroke." *Id.*  Accordingly, "what matters to class certification . . . is not the

15  raising of common questions—even in droves—but, rather the capacity of a classwide

16  proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

17  This requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019.  Accordingly,

18  "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.*; *see also*

19  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

20      Here, class members' WADAD claims are predicated on a common course of

21  conduct by Appstack:  the use of the same autodialer to robocall and then play the same

22  recorded message to each number.  As such, these claims implicate questions of law and

1   fact that can be resolved with common evidence, including, for example, (1) whether

2   Appstack's dialer meets the statutory definition of an "automatic dialing and announcing

3   device," RCW 80.36.400(1)(a), (2) whether Appstack's message meets the statutory

4   definition of a "commercial solicitation," RCW 80.36.400(1)(b), and (3) whether Mr.

5   Espinosa and Mr. Zdanowski should be held vicariously liable for Appstack's calls. *See*

6   *Taylor v. Universal Auto Grp. I, Inc.*, No. 3:13-CV-05245-KLS, 2014 WL 6654270, at

7   *11 (W.D. Wash. Nov. 24, 2014) ("A defendant's pattern of standardized conduct

8   generally is sufficient to constitute a common nucleus of operative facts."); *Agne v. Papa*

9   *John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (finding commonality because

10  "all class members were sent substantially similar unsolicited text messages by the same

11  defendants, using the same automatic dialing technology" and "the question of whether

12  [the defendant] can be held liable for the conduct of its franchisees is a common question

13  whose answer is apt to drive resolution of the case").  Because these questions of law and

14  fact can be resolved in one stroke, the commonality prong is satisfied. *See Dukes*, 131 S.

15  Ct. at 2551.

16      **4.  Typicality**

17      "[R]epresentative claims are 'typical' if they are reasonably co-extensive with

18  those of absent class members; they need not be substantially identical." *Hanlon*, 150

19  F.3d at 1020.  "Typicality refers to the nature of the claim or defense of the class

20  representative, and not to the specific facts from which it arose or the relief sought."

21  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Nonetheless, the

22  //

1   "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co.*

2   *of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  "Both serve as guideposts for

3   determining whether under the particular circumstances maintenance of a class action is

4   economical and whether the named plaintiff's claim and the class claims are so

5   interrelated that the interests of the class members will be fairly and adequately protected

6   in their absence." *Id.*  In determining typicality, courts consider "whether other members

7   have the same or similar injury, whether the action is based on conduct which is not

8   unique to the named plaintiffs, and whether other class members have been injured by the

9   same course of conduct." *Hanon*, 976 F.2d at 508.  The Ninth Circuit has cautioned that

10  "a named plaintiff's motion for class certification should not be granted if there is a

11  danger that absent class members will suffer if their representative is preoccupied with

12  defenses unique to it." *Id.*

13        As discussed in the court's March 30, 2015, order, Plaintiff puts forth evidence

14  showing that Appstack's robocalls are not unique to Mr. Booth and that the other class

15  members in the state of Washington have received and been injured by the same

16  robocalls.  (*See* 3/30/15 Order; 1st Hansen Decl.)  There is no indication that class

17  members are entitled to raise additional or different claims than the WADAD claim Mr.

18  Booth seeks to assert.  Moreover, there is no indication that Mr. Booth's WADAD claims

19  are subject to unique defenses.  Accordingly, his claim is "reasonably co-extensive" with

20  those of absent class members. *See Hanlon*, 150 F.3d at 1020.  The typicality prong is

21  met.

22  *//*

### 5.  Adequacy

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020). Here, Defendants do not challenge Plaintiffs' counsel's qualifications.  (Resp. at 26 n.2 ). The court agrees that Plaintiffs' counsel satisfies this criterion.  (*See* Terrell Decl. (Dkt. # 37) (describing proposed class counsel's qualifications and history of related litigation).)

Defendants challenge the named plaintiff's adequacy on the same grounds on which they challenge typicality and the predominance of common questions of law or fact.  (*See* Resp. at 20-21.)  The court relies on its reasoning stated above and below addressing Defendants' arguments concerning typicality and predominance.  *See supra* § III B.1; *infra* § III.B.6.  Defendants do not identify any conflict of interest between proposed class representative, Mr. Booth, and the class members, and the court is aware of none.  Moreover, Mr. Booth and his counsel have evidenced their willingness and ability to prosecute the action vigorously on behalf of the class.  (*See, e.g.*, Mot. (timely addressing deficiencies the court identified in the previous motion to certify a class).) Therefore, this prong is met.

//

//

### 6. Predominance of common questions

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Although related to the Rule 23(a) commonality requirement, this criterion is "far more demanding." *Amchem Prods.*, 521 U.S. at 624. The predominance inquiry measures the relative weight of the common to individualized questions. *Id.* "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, ---U.S.---, 131 S. Ct. 2179, 2184 (2011).

Defendants contend that individualized questions predominate in light of issues relating to (1) whether the message each class member received constitutes a "commercial solicitation," and (2) whether the accurate identification of class members. (*See generally* Resp.) The court addresses each contention in turn.

### a. Commercial solicitation

Defendants contend that individualized inquires will predominate because Appstack's recorded message does not constitute a "commercial solicitation" unless it was received by a live person, and there is no way to determine from telephone records

1   whether a call was answered by a live person or sent to voice mail.  (Resp. at 27-28.)

2   Defendants' argument is based on a faulty premise.

3         Commercial solicitation "means the unsolicited initiation of a telephone

4   conversation for the purpose of encouraging a person to purchase property, goods, or

5   services."  RCW 80.36.400(1)(b).  Courts have consistently held that "initiation of a

6   telephone conversation" does not require a recipient to be able to (or to actually) connect

7   to a live person during the course of the recorded message.  *See Anderson v. Domino's*

8   *Pizza, Inc.*, No. 11-CV-902 RBL, 2012 WL 1684620, at *3 (W.D. Wash. May 15, 2012)

9   *adhered to on reconsideration*, No. 11-CV-902 RBL, 2012 WL 2891804 (W.D. Wash.

10   July 16, 2012); *Meilleur v. AT & T, Inc.,* No. 11-cv-1025, 2011 WL 5592647, at *7

11   (W.D. Wash. Nov.16, 2011); *Hartman v. United Bank Card, Inc.,* No. 11-cv-1753 (W. D.

12   Wash. Mar. 23, 2012) (Robart, J.).  Rather, a message constitutes a commercial

13   solicitation so long as it invites the recipient to enter into an "exchange of information or

14   ideas" with the caller in some fashion.  *See Anderson*, 2012 WL 1684620, at *3.

15   Accordingly, a message that invites the recipient to dial a certain number to return the

16   call meets the definition of a commercial solicitation.  *Id.*; *Meilleur*, 2011 WL 5592647,

17   at *7; *Hartman,* No. 11-cv-1753 (W. D. Wash. Mar. 23, 2012).  However, a message that

18   merely provides information about a topic (even a solicitation to purchase goods) does

19   not.  *Cubbage v. Talbots, Inc.*, No. C09-911BHS, 2010 WL 2710628, at *5-6 (W.D.

20   Wash. July 7, 2010).

21   //

22   //

ORDER- 14

Appstack's recorded message stated:

> Google, yes Google, has approved your business for a new mobile marketing system.  To take advantage of this new exciting program, press one.  To be removed from the list and give the spot to your competitor, press two.

(Bus. Req. Doc. at 817-18.)  Pressing "one" allowed the recipient to speak to a customer service representative.  (Booth Dep. at 20:2-25; 48:9-49:1.)  Defendants impliedly concede that the message, when played to a live person, met the definition of a commercial solicitation.  (Resp. at 27-28.)  Defendants maintain, however, that the message did not meet the definition of a commercial solicitation when played to an answering machine because an answering machine is not capable of responding to the invitation to "press one."  (*Id.*)  Defendants cite no authority for their contention that whether a message is a commercial solicitation varies depending on what happens after the message is played.  To the contrary, courts do not require a recipient to have accepted the invitation to a conversation in order for the invitation to constitute a commercial solicitation.  *See Anderson*, 2012 WL 1684620, at *3; *Meilleur*, 2011 WL 5592647, at *7.

The WADAD provides that "no person" may use a "device which automatically dials telephone numbers and plays a recorded message" "for purposes of commercial solicitation."  RCW 80.36.400(1), (2).  Consequently, the "recipient of commercial solicitations made using an automatic dialing and announcing device" is entitled to damages.  RCW 80.36.400(3).  Therefore, according to the plain language of the statute, to the extent that Appstack's dialer played the above-quoted recorded message "for purposes of" the "initiation of a telephone conversation," the recipient of that message is

ORDER- 15

1   entitled to damages.  RCW 80.36.400(1), (2), (3).  The "WADAD is remedial in nature

2   and should be read broadly to accomplish its goal rather than narrowly with the effect of

3   creating bizarre and legislatively-unintended loopholes."  *See Anderson*, 2012 WL

4   1684620, at *3.  The court declines to condition the definition of message as a

5   commercial solicitation on the type of response provided to the message.

6        Appstack's reliance on *Hartman II* is misplaced.  *See Hartman v. United Bank*

7   *Card Inc. (Hartman II)*, No. C11-1753JLR, 2012 WL 4758052, at *13-14 (W.D. Wash.

8   Oct. 4, 2012).  The reason the court in *Hartman II* found that the inability to determine

9   whether a call was answered by a machine or a live person prevented class certification

10  was because the autodialer was programmed to play a different message in each situation.

11  (*See id.*)  The message played when a live person answered ("Oops, wrong number.")

12  plainly did not constitute a commercial solicitation.  *Id.* ("[I]f [the defendant's] platform

13  predicted that a live person would answer the telephone, then the message that . . . played

14  simply apologized and terminated the call.  This message would not constitute a

15  'commercial solicitation' in violation of the statute . . . .").  The court declines to extend

16  *Hartman* to the situation in which the same message is played regardless of how the call

17  is answered.

18        Because the court concludes that it is not necessary to determine whether a live

19  person answered the call in order to determine whether Appstack's recorded message

20  constituted a "commercial solicitation," the individualized inquiries necessary to make

21  such a determination have no bearing on class certification.

22  //

ORDER- 16

**b.  Class membership**

With respect to class identification, Defendants point out the following flaws in Plaintiff's proposed methodology.  First, Defendant's expert states that Plaintiff's search records do not accurately or reliably reflect the physical location of a given landline because they pinpoint only the carrier switch at which a call is processed.  (Fischer Decl. (Dkt. # 57) ¶ 20, 22.)  Because modern advances in telephony make it possible that a call may terminate some distance from the carrier switch, a call associated with a carrier switch located in Washington may in fact terminate outside the state.  (*Id.*)  Defendant's expert, however, provides no indication of the frequency at which such long-distance termination occurs.  (*See id.*)  Plaintiff's expert, on the other hand, is of the opinion that carrier switches handle calls to landlines located "at most" a block of two away.  (Hansen Decl. (Dkt. # 47) ¶ 5.)

Additionally, Plaintiff proposes to remedy any uncertainty by cross-referencing the carrier switch location with the business name and address associated with each telephone number (which are identifiable by reverse look-up directories).  (Reply (Dkt. # 58) at 7-9.)  Plaintiff submits a sample set of 66 Appstacks' autodialed telephone numbers associated with carrier switches in the border cities of Vancouver, Washington and Spokane, Washington.  (*See* Hoover Decl.)  Of those 66 numbers, 65 were associated with switches and addresses located in the state of Washington (the last one did not have available address information).  (*Id.*)  In light of that solution, the court finds that the relationship between carrier switches and landline locations does not preclude a finding that common questions predominate.

1    Next, Defendants' expert points out various reasons why a carrier switch location

2  will not necessarily represent the actual termination point of a call.  Specifically,

3  customers can set up automatic call forwarding to another phone number, either through a

4  service provider or through a personal network.  (Fischer Decl. ¶¶ 21-24.)  In addition,

5  carriers can provide virtual telephone numbers, in which a line with a given area code,

6  although identified as a local landline, is in fact forwarded to a different geographic

7  location.  (Fischer Decl. ¶¶ 11-12.)  Defendants, however, fail to identify any phone

8  numbers called by the autodialer that employ such services, or even what percentage of

9  numbers can be expected to employ such services in general.

10    Speculation is insufficient to defeat class certification.  *See Meyer v. Portfolio*

11  *Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (rejecting arguments against

12  commonality because the defendant did not show a single instance in which the alleged

13  distinction between class members had in fact occurred).  Moreover, Plaintiff represents

14  that records kept by the carrier can solve both problems:  these records identify the phone

15  number to which calls are assigned to be forwarded, and as well as whether a given

16  phone number corresponds to a virtual line.[4]  (Reply at 9; Hansen Decl. ¶ 4 ("Forwarding

17  technology requires that a landline . . . tell the carrier to which number they desire a call

18  to be forwarded.  That information is retained by the carriers for billing purposes.").  The

19  court is wary that consulting carrier records, to the extent it is necessary, might

20

21

22    [4] The court notes that although Plaintiff does not propose a solution to determining the
termination location when a personal network is used to forward a call, there is no indication from
Defendants that such networks are used in more than a de minimus portion of landlines.

1    mushroom into individual inquiries that overshadow the common questions in the case.

2    Plaintiff, however, represents that the process will entail a straightforward, mechanical

3    review of carrier records that can be summarized and presented via expert testimony,

4    rather than individual mini-trials. (*See* Reply ; Mot.); *see Zinser*, 253 F.3d at 1189.

5        If that is the case, common issues will predominate.  The elements of a WADAD

6    claim are:  (1) reception of a telephone call (2) in the state of Washington (3) made by an

7    "automatic dialing and announcing device" that (4) played a recorded message that (5)

8    constituted a "commercial solicitation.  *See* RCW 80.36.400(1), (2), (3).  As discussed

9    above, four of the five elements are subject to common proof, as is the question of

10   whether the individual defendants can be held vicariously liable.  *See supra* § III.B.3.

11   The fifth—reception in the state of Washington—may require inquiry into individual

12   carrier records.  However, even if so, on this record, those inquiries are outweighed by

13   the common proof available to establish the other elements.  *See Amchem Prods.*, 521

14   U.S. at 624.  As such, the court concludes that the class is "sufficiently cohesive" to

15   permit common adjudication.  *See Hanlon*, 150 F.3d at 1022.

16       The court notes that Defendants raise the question in passing whether carriers have

17   retained customers' billing records for the intervening six years between the autodialed

18   calls and this lawsuit.  (*See* Fischer Decl. ¶ 28.)  Class certification is contingent on the

19   ability to obtain the information necessary to establish class membership.  In the event

20   difficulties obtaining the requisite information prove insurmountable, the court "retains

21   the flexibility to address problems with a certified class as they arise, including the ability

22

ORDER- 19

1    to decertify." *United Steel Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 807

2    (9th Cir. 2010).

3        **7.  Superiority**

4        When evaluating superiority, courts must consider the nonexclusive list of the four

5    factors set forth Rule 23(b)(3). *Zinser*, 253 F.3d at 1190. These factors include the class

6    members' interests in individually controlling the prosecution or defense of separate

7    actions; the extent and nature of any litigation concerning the controversy already begun

8    by or against class members; the desirability or undesirability of concentrating the

9    litigation of the claims in the particular forum; and the likely difficulties in managing a

10   class action. Fed. R. Civ. P. 23(b)(3). "A consideration of these factors requires the

11   court to focus on the efficiency and economy elements of the class action so that cases

12   allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a

13   representative basis." *Zinser*, 253 F.3d at 1190. "In general, where damages suffered by

14   each putative class member are not large, this factor weighs in favor of certifying a class

15   action." *Id.* This is because the "policy at the very core of the class action mechanism is

16   to overcome the problem that small recoveries do not provide the incentive for any

17   individual to bring a solo action prosecuting his or her rights." *Amchem Prods.*, 521 U.S.

18   at 617.

19       Here, the first factor weighs in favor of certification. Under the WADAD,

20   damages are presumed to be $500.00. RCW 80.36.400(3). As courts frequently

21   recognize, a $500.00 statutory damages provision is likely insufficient to compensate the

22   average consumer for the time and effort involved in bringing a small claims action. *See,*

1 | *e.g.*, *Agne*, 286 F.R.D. at 571; *Bellows v. NCO Fin. Sys., Inc.,* No. 3:07-CV-01413-W-

2 | AJB, 2008 WL 4155361, at *8 (S. D. Cal. Sept. 5, 2008).  "Without the availability of

3 | class relief, many class members would certainly be unable to proceed as individuals

4 | because of the disparity between their litigation costs and what they hope to recover."

5 | *Taylor*, 2014 WL 6654270, at *20 (finding that a class action TCPA suit was superior to

6 | individual actions) (internal citations omitted).

7 |      As to the second and third factors, there is no evidence before the court that other

8 | lawsuits concerning this controversy are pending or that concentrating the litigation in

9 | this particular forum would be undesireable.

10 |      Finally, at this stage, it appears that the case is manageable as a class action.  As

11 | discussed above, the court expects that the elements of the class members' WADAD

12 | claims can be resolved by common evidence and that any recourse to telephone carrier

13 | records or reverse-lookup directories required can be presented succinctly by expert

14 | testimony.  (*See supra* § III.B.1, 6; Hansen Decl.)  If those issues should prove

15 | unmanageable, the court retains authority to take appropriate remedial measures,

16 | including, if necessary, decertifying the class.  *See United Steel Workers Int'l Union*, 593

17 | F.3d at 807.

18 | **8.  Certification**

19 |      In conclusion, the court finds that all of the prerequisites of Rule 23(a) and (b) are

20 | met and that the class definition as modified is ascertainable.  *See Dukes*, 131 S. Ct. at

21 | 2548.  Accordingly, the court grants Plaintiff's motion, certifies the class, and appoints

22 | Plaintiff Monty Booth as class representative.

ORDER- 21

### 9.  Class counsel

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, a court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Upon review, the court concludes that counsel at Terrell Mashall Daudy and Willie, PLLC ("TMDW") have diligently investigated the claims in this action to date and intend to continue to devote appropriate time and resources to this litigation.  (*See generally* Terrell Decl.)  The court also concludes that counsel at TMDW have evinced knowledge of the class certification standards and WADAD claims applicable to this case and that they possess appropriate levels of experience in similar matters.  (*See generally id.*; Mot.; Reply.)  Moreover, Defendants do not object to the appointment of TMDW as class counsel.  (Resp. at 26 n.2.)  Accordingly, the court appoints Beth Terrell, Whitney Stark, Mary Reiten, and Dan Gallagher of the law firm Terrell Marshall Daudt & Willie, PLLC, as class counsel.

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' second motion for class certification (Dkt. # 53).  The court further orders as follows:

(1) The court GRANTS Plaintiff's motion for certification of a Washington class to bring claims under the WADAD;

1    (2) The court APPOINTS Beth Terrell, Whitney Stark, Mary Reiten, and Dan

2  Gallagher of the law firm Terrell Marshall Daudt & Willie, PLLC, as class counsel, and

3  APPOINTS Plaintiff Monty Booth as class representative.

4    Dated this 13th day of July, 2015.

5

6

7

    JAMES L. ROBART
8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 23