The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MONTY J. BOOTH, ATTORNEY AT LAW, P.S., a Washington corporation, RICARDO T. MASCARENAS, a Washington resident, and CHRISTOPHER GREGORY, a Washington resident, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>APPSTACK, INC., a Delaware corporation; STEVE ESPINOSA, individually; and JOHN ZDANOWSKI, individually,<br><br>Defendants. | NO. 2:13-cv-01533-JLR<br><br>**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS**<br><br>Note on Motion Calendar: May 20, 2016<br><br>*"ORAL ARGUMENT REQUESTED"* |

///
///
///
///
///
///
///

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page i
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

**TABLE OF CONTENTS**

<u>Page</u>

I.   INTRODUCTION ........................................................................................1

II.  DECERTIFICATION FACTUAL BACKGROUND ...............................1
   A.   Appstack ............................................................................................1
   B.   Telephone Number Basics ................................................................3
        1.   Porting ......................................................................................3
   C.   Telephone Number Recycling...........................................................5
   D.   Telephone Number Renting...............................................................6
   E.   Call Routing .......................................................................................6

III  PROCEDURAL HISTORY .......................................................................7
   A.   Discovery ..........................................................................................10
   B.   Review of the Telephone Records Produced ..................................11

IV.  STANDARDS ...........................................................................................15
   A.   Class Actions Generally ..................................................................15
   B.   Motions to Decertify Classes Specifically .....................................16

V.   POINTS AND AUTHORITIES................................................................17
   A.   The Technological Reasons Decertification Is Proper .................17
        1.   The Records Problem .............................................................17
        2.   The Porting Problem ..............................................................18
        3.   The Telephone Number Recycling Problem .........................19
        4.   The Wide-Area Network (WAN) Problem............................20
        5.   The Call-Forwarding Problem ...............................................20
        6.   The VoIP Problem ..................................................................21

VI.  THE WADAD CLASS SHOULD BE DECERTIFIED ...........................21
   A.   The Current WADAD Class.............................................................21
   B.   Individual Class Member Questions Predominate.........................22
   C.   There is No Single Set of Business Records for Quick
        and Easy Searching .........................................................................24
   D.   If Allowed to Persist, the WADAD Class will be Underinclusive and
        Overinclusive....................................................................................25
   E.   The WADAD Class should be Decertified .......................................26

VII. The TCPA Class Should Be Decertified ...............................................26
   A.   The Current TCPA Class .................................................................26
   B.   The TCPA Class Fails for the Same Reasons the WADAD Class Fails ........27
   C.   The TCPA Class should be Decertified ..........................................27
   D.   Both the WADAD Class and TCPA Class will be Impermissible "Fail-Safe"
        Classes, Particularly if Plaintiffs Obtain Summary Judgment ......28
   E.   The Fail-Safe Class Problem ...........................................................28

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1

**TABLE OF CONTENTS**

2                                                     **Page**

**F.**       **Plaintiffs Cannot Avoid a Fail-Safe Class Catch-22** ...........................................**29**

3 **VIII.**  **CONCLUSION** ...........................................................................................................**30**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page iii
Case No. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

# TABLE OF AUTHORITIES

Page

**Cases**

*Adashunas v. Negley*, 626 F2d 600 (7th Cir. 1980)..................................................29

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...........................................14, 26

*Bell v. Addus Healthcare, Inc.,* No. C06-5188 RJB, 2007 WL 3012507
    (W.D. Wash. Oct. 12, 2007) ..................................................................................26

*David v. Bankers Life & Cas. Co.*, No. C14-766 RSL, 2015 WL 3994975
    (W.D. Wash. June 30, 2015).................................................................................17

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, (9th Cir. 2007)...........................................16

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)...................................16

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) .............16

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) .........................................14

*Hartman v. United Bank Card*, 291 F.R.D. 591 (WD Wash 2013)...............................23

*In re Best Re-Manufacturing Co.*, 453 D.2d 848 (9th Cir. 1971)...............................19

*Jahn v. 1–800–FLOWERS.com, Inc.*, 284 F.3d 807 (7th Cir. 2002)............................19

*Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010).............................28, 30

*Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2009 WL 413509,
    (WD Wash Feb. 18, 2009)....................................................................................17

*Lane v. Kitzhaber*, 283 F.R.D. 587 (2012) ...............................................................16

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998)...........................18

*Onley v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2013 WL 5476813
    (E.D. Cal. Sept. 30, 2013)...................................................................................30

*Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242 (11th Cir. 2014) ..........................19

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008).......................15

*Randleman v. Fid. Nat. Title Ins. Co.*, 646 F3d 347 (6th Cir 2011) ...........................29

*Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2014 WL 988992
    (N.D. Cal. Mar. 10, 2014).....................................................................................8

*Schwartz v. Upper Deck Co.*, 183 F.R.D. 672 (S.D. Cal. 1999)...................................15

*Taylor v. Universal Auto Grp. I, Inc.*, No. 3:13-CV-05245-KLS, 2014 WL 6654270
    (W.D. Wash. Nov. 24, 2014) .................................................................................30

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus.*
    *& Serv. Workers Int'l Union, AFL–CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010)................................................................................17

*United Steel Workers, Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010)......... 9-10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ............................................16

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) .......................................8

**Statues**

47 C.F.R. §52.7(c) ...................................................................................................4

FRCP 23................................................................................8, 15, 16, 17, 22

RCW 80.36.400 ......................................................................1, 7, 22, 23

U.S.C. §227............................................................................................................1

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page iv
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

**Page**

**Other**

3 Alba Conte & Herbert Newberg, Newberg on Class Actions § 7:47 (4th ed. 2002)................17

2004 NANC Report .............................................................................................................5

*Comment*, Erin L. Geller, The Fail–Safe Class As an Independent
      Bar to Class Certification, 81 Fordham L.Rev. 2769 (2013)....................................28

FCC 15-72, Declaratory Ruling and Order, *In the matter of Rules and
      Regulations Implementing the Telephone Consumer Protection Act of 1991*,
      CG Docket No. 02-278, WC Docket No. 07-135, adopted June 18, 2015,
      released July 10, 2015................................................................................5, 19

Fed.R.Civ.P. 23 advisory committee's notes (1966)..................................................26

Local Telephone Competition: Status as of December 31, 2013, FCC,
      Wireline Competition Bureau, Industry Analysis and
      Technology Division (Oct. 16, 2014)
      https://apps.fcc.gov/edocs_public/attachmatch/DOC-329975A1.pdf ...........................6, 7

Notice of Proposed Rulemaking and Declaratory Ruling, 29 FCC Rcd. 14969 (2014)..................6

Order, Report and Order and Further Notice of Proposed Rulemaking,
      Proposal for Ongoing Data Initiative, 29 FCC Rcd. 1433 (2014),
      PS Docket No. 14-174, GN Docket No. 13-5, RM- 11358,
      WC Docket No. 05-25, RM-10593.................................................................6

Report and Order, June 2015, *In the Matter of Numbering Policies for Modern
      Communications, et al.*, WCC Docket No. 13-97 ................................................6

Report and Order, *In the Matter of Numbering Resource Optimization*,
      CC Docket No. 99-200, FCC 00-104 (March 2000) ............................................4

*Technology Transitions, et al.*, GN Docket No. 13-5, et al. ........................................6

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page v
Case No. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

## I.      INTRODUCTION

It has become clear that this case should not proceed as a class action.  Allowing the case to proceed this way is contrary to the rationales of class action adjudication.   Accordingly, Defendants respectfully submit that this Court should decertify both classes it previously certified, the Washington Automatic Dialing and Announcing Device Statute (RCW 80.36.400, the "WADAD") class and the Telephone Consumer Protection Act (U.S.C. § 227(b)(1)(A)(iii), the "TCPA") class, because:

1.      Recent discovery has demonstrated class-wide problems that neither the WADAD nor the TCPA class can withstand;

2.      Plaintiffs cannot show critical facts about the telephone numbers at issue in this case and, in particular, whether said numbers were Washington landlines (WADAD) or cellular numbers (TCPA);

3.      At least five technological problems –  (1) intermodal porting; (2) phone number recycling; (3) wide area network technology; (4) call forwarding; and (5) voiceover Internet protocol systems create insurmountable difficulties for maintaining the WADAD class or the TCPA class certified in this case; and

4.      The WADAD class and the TCPA class are both subject to significant problems associated with the impermissible fail-safe class format and, therefore, almost certainly cannot be adjudicated properly as a class action.

This Motion is supported by the documents on file with the Court, in particular the briefing and evidence submitted in association with Defendants' opposition to Plaintiffs' Motions for Summary Judgment that is incorporated herein by reference (Dkt. 85), and the arguments herein.

## II.      DECERTIFICATION FACTUAL BACKGROUND

### A.      Appstack

Appstack was a venture-back startup technology company that sold an all-inclusive mobile marketing product to small businesses that created websites for customers that were optimized for use with mobile devices.  Espinosa Decl. ¶ 7 (Dkt. 72, p. 2); Zdanowski Decl. ¶ 5 (Dkt. 71, p. 2); Gruber Decl. Ex. 3 (Dkt. 70-3, p. 5 (19:20-21:9)), Ex. 4 (Dkt. 70-4, p. 6 (20:15-21:10)).  Appstack created advertising campaigns for its customers with the goal of driving more traffic and business

DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS - Page 1
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

to customers through their newly optimized mobile websites.  Id.  About three to six months after its official founding, Appstack developed a product it believed it was ready to take to market. Espinosa Decl. ¶ 14 (Dkt. 72, p. 3); Zdanowski Decl. ¶ 12 (Dkt. 71, p. 3); Gruber Decl. Ex. 1 (Dkt. 76-1 (26:12-15)).

Initially, Appstack's "sales department" only utilized cold calling to contact potential customers.  Johnson Decl. ¶ 6 (Dkt. 73, p. 2); Espinosa Decl. ¶ 9 (Dkt. 72, p. 3); Gruber Decl. Ex. 1, (Dkt. 76-1 (29:3-30:16;  41:1-15;  46:18-47:8)).  Appstack then hired Scott Kirkpatrick ("Mr. Kirkpatrick") as its Director of Sales.  Johnson Decl. ¶ 11 (Dkt. 73, p. 3); Espinosa Decl. ¶ 10 (Dkt. 72, p. 3).  Appstack then set up a call center to handle its telephone marketing and sales. Johnson Decl. ¶ 12 (Dkt. 73, p. 4); Gruber Decl. Ex. 1 (Dkt. 76-1 (45:19-22; 46:18-20)), Ex. 2 (Dkt. 76-2 (37:8-18; 56:8-21; 59:1-12; 81:2-15; 88:12-89:1; 93:4-10)); Ex. 3 (Dkt. 76-3 (26:1-6)). InContact, Inc. ("inContact") was the third-party vendor that assisted with setting up and implementing Appstack's call center.  Johnson Decl. ¶ 13 (Dkt. 73, p. 4); Espinosa Decl. ¶ 22 (Dkt. 72, p. 5).  The calls made by inContact are the source of Plaintiffs' claims.

Since the whole point of Appstack's business was to drive traffic to these small business customers via mobile website, Appstack's clients needed to provide their telephone numbers to Appstack.  (Dkt. 36-1, pp. 3-4; Espinosa Decl. ¶¶ 3, 4 (Dkt. 88).) Each customer was required to provide their telephone number in order to sign up for Appstack's service.  Espinosa Decl. ¶ 3 (Dkt. 88).  Appstack also performed its own marketing by online self-signup.  Kirpatrick Decl. ¶ 5 (Dkt. 89); Espinosa Decl. ¶ 2 (Dkt. 88); (Dkt. 36-1, p. 80).  This allowed potential customers to obtain more information about Appstack's service by providing their contact information online or through platforms like Facebook.  Espinosa Decl. ¶¶ 3, 4 (Dkt. 88); (Dkt. 88-1).  Potential customers were required to provide their telephone numbers.  Espinosa Decl. ¶¶ 3 (Dkt. 88).

Appstack's mobile marketing service was offered to its customers on a month-to-month basis.  (Dkt. 36-1, p. 3.)  Callers who received a telephone call could "press 1" for more information or "press 2" to opt out of future calls.  Callers who pressed No. 1 were routed to a live operator.

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 2
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   (Dkt. 36-2, pp. 64-70.)  Callers who pressed No. 2 were added to the do not call list ("the DNC")

2   kept by Appstack.  Appstack and the individuals who ran the company believed Appstack was in

3   compliance with the law by keeping a DNC list, updating it regularly, scrubbing telephone

4   numbers against the list, and instructing the sales team regarding compliance.  Kirkpatrick Decl.

5   ¶ 5 (Dkt. 89); Bartlett Decl. ¶¶ 4, 5 (Dkt. 86).  To combat attrition, Appstack initiated at least one

6   "win back" campaign in an attempt to regain former customers who had cancelled the service.

7   Espinosa Decl. ¶ 5 (Dkt. 88).

8          In addition to the telephone numbers obtained through Sales Genie, Appstack made

9   automatic-dialer sales calls to former customers.  See, e.g., (Dkt. 36-1, p. 17); (Dkt. 36-1, pp. 36,

10  75-76); (Dkt. 36-2, p. 36); (Dkt. 36-1, p. 17).  At one point, there was also a problem removing

11  cancelled accounts from the dialer list.  (Dkt. 36-1, pp. 75-78.)

12         The dialer used by Appstack also had a call-back feature.  (Dkt. 36-2, pp. 66-70.)  If

13  inbound callers preferred, instead of holding while live operators were busy with other customers,

14  they could 'Press 1' to receive a call back at the telephone number from which they called.  (Dkt.

15  36-2, pp. 67-69.)  Alternatively, they could 'Press 2' to receive a call-back at an alternate telephone

16  number provided to Appstack.  Id.  This saved their place in line (as if they had continued to hold)

17  and allowed an Appstack representative to call them back.  Id.  In response to at least one call from

18  Appstack, he pressed 'one' to indicate that he was interested in obtaining information about

19  Appstack's services, and he was connected to a live operator.   Complaint ¶ 5.3 (Dkt. 1, p. 4).

20         Appstack ran out of funding and was unable to find a potential buyer for its intellectual

21  property and its account with inContact was disconnected on Monday, October 7, 2013.  Espinosa

22  Decl. ¶ 31 (Dkt. 72); Zdanowski Decl. ¶ 33 (Dkt. 71); Gruber Decl. Ex. 3 (Dkt. 76-3 (21:10-

23  23:17)); Ex. 4 (Dkt. 76-4 (24:17-25:20)); (Dkt. 36-1, p. 46).

24  **B.     Telephone Number Basics**

25         **1.     Porting**

26         The North American Numbering Plan ("NANP") is an integrated telephone numbering

DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS - Page 3
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

plan serving 20 North American countries that share its resources. These countries include the United States and its territories. Each participating country has absolute authority over its numbering resources. *See,* Report and Order, *In the Matter of Numbering Resource Optimization,* CC Docket No. 99-200, FCC 00-104 (March 2000), p. 4. The area served by NANP is divided into smaller Numbering Plan Areas ("NPA"), each identified by a three digit NPA code, commonly called an area code. In 2000, the NANP Administrator projected that 47 area codes were predicted to exhaust by the end of the year 2000 unless something was done to slow down the rate at which central office codes in those areas were being assigned to carriers. *Id.* The central office code, or "NXX" code, refers to the second three digits (also called digits D-E-F) of a 10 digit telephone number in the form NPA-NXX-XXXX, where N represents any one of the numbers 2 through 9 and X represents any one of the numbers 0 through 9. 47 C.F.R. § 52.7(c).

The Number Portability Administration Center ("NPAC") is responsible for telephone number administration. (Dkt. 92, ¶ 3.) NPAC is the administrator of the telephone number database and keeps track of telephone numbers and presently allocates telephone numbers to carriers in blocks of 10,000. *See,* FCC Report and Order, *In the Matter of Numbering Resource Optimization,* CC Docket No. 99-200, FCC 00-104 (March 2000). The FCC has stated,

> In adopting nationwide thousands-block number pooling as a number resource optimization strategy, we are mindful that this strategy is a means to an end – achieving more efficient number utilization – and not an end in itself. *Id.* at 9.

Porting is the practice of moving telephone numbers from one telephone carrier to another. Fischer Decl. ¶ 5 (Dkt. 87). Porting may coincide with a change in subscriber, as well. Id. For example, if a company owns 100 telephone numbers and is purchased by another company, those numbers would be assigned to a new owner. Id at ¶ 8. NPAC handles porting between carriers. (Dkt. 92, ¶ 4.) Neustar is the tool used by a carrier to determine whether a telephone number can be ported. Id. Neustar does not include information about whether a telephone number has been assigned to a subscriber or activated, it only knows which carrier is currently assigned the

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 4
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   telephone number.  Fischer Decl. ¶¶ 4-5 (Dkt. 87).  If a number has been ported, Neustar shows

2   when the number was ported and from which telephone carrier.  Id.  Porting can happen quickly,

3   with a single telephone number taking from 5 to 10 days, and porting 100 telephone numbers

4   taking about 19 days. Id. at ¶ 7.  This means that at the request of a subscriber, a telephone number

5   previously associated with landlines may be used for a cellular telephone number, and vice versa.

6   Hansen Decl. (Dkt. 38, p. 4, ll. 23-24).  The industry refers to this as intermodal porting.  *See*, 2004

7   NANC Report, Ex. 3, (Dkt. 90-2, p. 13) ("Intermodal porting is defined as wireline to wireless and

8   wireless to wireline porting").  A cell phone number may be ported into a landline within a matter

9   of days.  Similarly, a landline may be turned into a cell phone number in an even shorter time

10  frame.  *Id.*  There is no nationwide telephone directory of cell phone numbers.  (Dkt. 90-1 p. 3;

11  Dkt. 90-3, p. 40.)

12  **C.**     **Telephone Number Recycling**

13          Telephone carriers also recycle telephone numbers.  (Dkt. 92, ¶ 8.)  See, FCC 15-72,

14  Declaratory Ruling and Order, *In the matter of Rules and Regulations Implementing the Telephone*

15  *Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, adopted June

16  18, 2015, released July 10, 2015, (Dkt. 90-3) (discussing "Reassigned Wireless Telephone

17  Numbers and acknowledging the problems that result from lack of a nationwide directory as it

18  relates to consent")).  In 2011, the FCC estimated that 37 million telephone numbers are recycled

19  per year.  (Dkt. 90-1, p. 2, n. 1.)  When a subscriber disconnects service, the telephone number

20  will put that telephone number back into the pool of numbers available to that carrier.  Fischer

21  Decl. ¶ 8 (Dkt. 87).  There is no required wait time for a carrier to reassign a previously used

22  telephone number.  Id.  This is the reason why a new subscriber may receive calls for the prior

23  subscriber. Id. at ¶ 9.  The telephone number recycling pre-dates 2013.  (Dkt. 87, ¶ 8.)  Neustar

24  will not have a record of the recycling of telephone numbers by an individual carrier, so long as

25  the telephone number is not ported between carriers.  (Dkt. 87, ¶ 9.)

26  ///

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 5
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

**D.     Telephone Number Renting**

Carriers also rent telephone numbers to other carriers. This is a common practice called "wholesale voice." (Dkt. 87, ¶10.)  A telephone call that results in a voice recording along the lines of "we are working to locate the subscriber you dialed" is one indication that the telephone number dialed was rented to another carrier. Id.  A carrier that rents telephone numbers to another carrier will not have a record identifying the subscriber.  Id.

**E.     Call Routing**

In its Report and Order, June 2015, *In the Matter of Numbering Policies for Modern Communications, et al.*, WCC Docket No. 13-97, the FCC acknowledged that the "nation's communications infrastructure is undergoing key technology transitions, including that from networks based on time division multiplexed (TDM) circuit switched voice services to all Internet Protocol (IP) multimedia networks." *Citing Technology Transitions, et al.*, GN Docket No. 13-5, et al., Order, Report and Order and Further Notice of Proposed Rulemaking, Proposal for Ongoing Data Initiative, 29 FCC Rcd. 1433, 1435, para. 1 (2014) (*Technology Transitions Order*); *Ensuring Customer Premises Equipment Backup Power for Continuity of Communications; Technology Transitions; Policies and Rules Governing Retirement Of Copper Loops by Incumbent Local Exchange Carriers; Special Access for Price Cap Local Exchange Carriers; AT&T Corporation Petition for Rulemaking to Reform Regulation of Incumbent Local Exchange Carrier Rates for Interstate Special Access Services*, PS Docket No. 14-174, GN Docket No. 13-5, RM- 11358, WC Docket No. 05-25, RM-10593, Notice of Proposed Rulemaking and Declaratory Ruling, 29 FCC Rcd. 14969 (2014) (*Copper Retirement NPRM*).  The FCC stated,

> This is evidenced by the nearly 48 million interconnected VoIP retail local telephone service connections in service as of the end of 2013, comprising over a third of all wireline retail local telephone service connections.

Report and Order, June 2015, *In the Matter of Numbering Policies for Modern Communications, et al.*,  WCC Docket No. 13-97, citing Local Telephone Competition: Status as of December 31,

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 6
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

2013, FCC, Wireline Competition Bureau, Industry Analysis and Technology Division, at 3, Fig. 2 (Oct. 16, 2014), https://apps.fcc.gov/edocs_public/attachmatch/DOC-329975A1.pdf (*Local Telephone Competition Report*).   In 2015, the FCC established a process to authorize interconnected VoIP providers to obtain NANP telephone numbers directly from NANPA rather than through intermediaries as was previously required. *Id.* at 2.

## III.   PROCEDURAL HISTORY

In August 2013, Plaintiffs filed a Complaint asserting class action on behalf of Monty J. Booth as class representative. (Dkt. 1.) Plaintiffs' Complaint alleges violations of the Washington Automatic Dialing and Announcing Device Statute ("WADAD"), RCW 80.36.400, along with claims for violation of the Washington Consumer Protection Act. On October 30, 2013, Plaintiffs filed an Amended Complaint indicating it was also seeking injunctive relief.

In November 2014, Plaintiffs filed a motion to certify both WADAD and TCPA[1] claims. (Dkt. 35.) Plaintiffs sought to certify both a WADAD class and a TCPA class. Plaintiffs proposed a WADAD class defined as:

> All Washington businesses who received one or more telephone calls made by Defendants and/or made on Defendants' behalf using an automatic dialing and announcing device, when such a call included a pre-recorded message containing a commercial solicitation and was transmitted to a telephone number with a Washington State area code at any time for the period that begins four years from the date of this Complaint to trial.

Plaintiff's Motion for Class Certification (Dkt. 35, p. 14).  Plaintiff also proposed a TCPA class defined as follows,

> All persons or entities in the United States who, on or after four years before the filing of this action, received a call on their cellular telephone line with a pre-recorded message, made by or on behalf of Defendants without the recipient's express prior consent.

(Dkt. 35, p. 15.)  The Court declined to certify Plaintiffs' proposed class asserting their claims

---

[1]    In December 2014, Plaintiffs filed a Second Amended Complaint adding Messrs. Mascarenas and Gregory as representatives for an alleged TCPA class. (Dkt. 49.)

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 7
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1  under WADAD.  (Dkt. 52, p 34.)  The Court indicated it was,

> . . . concerned about certifying a WADAD class that includes a meaningful number of members without claims under the WADAD.  Plaintiffs' proposal to certify a class first and identify whether class members actually have WADAD claims is no solution.

5  Id. at 32.  The Court found the proposed WADAD definition overbroad, and that it failed to satisfy

6  FRCP 23 requirements of typicality and predominance of common issues.  *Id.*  The Court also

7  concluded that Plaintiffs allegedly representative claims were not reasonably co-extensive with

8  those of absent class members because an appreciable number of the absent class members are not

9  entitled to bring claims under WADAD.  *Id.*

10  The Court noted that WADAD is inapplicable to calls that are both placed and received

11  outside the state of Washington.  *Id.* at 28-35.  Appstack's calls originated in California or Utah.

12  (Dkt. 61, citing 2d Reiten Decl. (Dkt. 46) Ex. 20.)  Plaintiffs' proposed class definition included

13  an appreciable number of members who had received calls outside of the state of Washington and,

14  as such, was unascertainable and unable to meet the requirements of typicality and predominance

15  of common issues. (Dkt. 35, pp. 28-35 citing *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311,

16  319 (C.D. Cal. 1998); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. 2011); *Rodman*

17  *v. Safeway, Inc.,* No. 11-CV-03003-JST, 2014 WL 988992, at *16 (N.D. Cal. Mar. 10, 2014).)

18  The Court certified a TCPA class after modifying Plaintiffs' definition in two ways.  First,

19  the definition was modified to "persons who received a call *to* their cellular telephone line." (Dkt.

20  52, p. 9.)  The Court noted Plaintiffs' expert had explained that the carrier records associated with

21  a cellular phone number would provide information regarding the number and location to which a

22  call was forwarded.  (Dkt. 52, p. 9.)  Second, Court omitted the requirement "without the

23  recipient's prior consent" in order to avoid a fail-safe class.  (Dkt. 52, p. 13.)  At that time, the

24  Court noted that Defendants had not come forward with evidence of consent. Id. at p. 23.  This

25  was prior to Defendants submission of evidence relating to "win-back" calls and calls made using

26  ///

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 8
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

the dialer to its own customers.[2]

The Court granted Plaintiffs 30 days to file a second motion to certify a WADAD class. (Dkt. 52, p. 34.)  Plaintiffs then filed a second motion which advanced a narrower class definition that did not include mobile or VoIP telephones.  (Dkt. 53; Dkt. 61, p. 3.)  On the second try, Plaintiffs proposed a class defined as:

> All persons who received on a landline located within the State of Washington one or more pre-recorded telephone messages placed by Defendants or on Defendants behalf on or after August 27, 2009, through the date of final disposition of this action. (Dkt. 61, p. 5.)

Plaintiffs claimed to have examined Appstack's autodialer records and determined that 53,665 eligible calls were made to 8,861 numbers within Washington area codes, and Plaintiffs further claim they then ran those numbers through a publicly available search website which claimed to identify the type of phone service (landline, cellphone, or VoIP), the service provider's name, and the carrier switch located with each telephone number.   (Dkt. 61, p. 6.)  Plaintiffs indicated they intended to use reverse lookup directories to identify the businesses or individuals who owned the telephone numbers. (Dkt. 60.)  Based on this, the Court granted Plaintiffs' motion noting,

> Class certification is contingent on the ability to obtain the information necessary to establish class membership.  In the event difficulties obtaining the requisite information prove insurmountable, the court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify.

(Dkt. 61, pp. 19-20 citing *United Steel Workers, Int'l Union v. ConocoPhillips Co.,* 593 F.3d 802, 807 (9th Cir. 2010).)

In its second motion for certification of the WADAD class, Plaintiffs addressed concerns

---

[2]   This information was in support of Defendants' opposition to summary judgment.  See (Dkt. 36-1, pp. 17, 67-68; Dkt. 36-2, p. 36); Espinosa Decl. ¶¶ 5, 6 (Dkt. 88; Dkt. 88-1; Dkt. 36-1, pp. 17, 75-78.)

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 9
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1    raised by the Defendants with several proposals.  Specifically, Plaintiffs represented that records

2    kept by the telephone carriers would identify the phone number to which calls are assigned to be

3    forwarded, as well as whether a given telephone number corresponds to a virtual line.  Notably,

4    Plaintiff represented that "the process will entail a straightforward, mechanical review of carrier

5    records that can be summarized and presented via expert testimony rather than individual mini

6    trials."  (Dkt. 61, p. 19.)  The Court noted that it was "wary that consulting carrier records, to the

7    extent it is necessary, might mushroom into individualized inquiries that overshadow the common

8    questions in the case." (Dkt. 61, pp. 18-19.)

9           Plaintiffs also proposed remedying uncertainty surrounding identification of call

10   termination by cross-referencing the carrier switch location with the business name and address

11   associated with a telephone number.  The Court's decision to certify the class was "in light of that

12   solution." (Dkt. 61, p. 17.)  Thus, in its Order certifying the WADAD class, the Court reiterated,

> Finally, at this stage, it appears that the case is manageable as a class action.
> As discussed above, the court expects that the elements of the class
> members' WADAD claims can be resolved by common evidence and that
> any recourse to telephone carrier records or reverse-lookup directories
> required can be presented succinctly by expert testimony.  (*See supra* §
> III.B.1, 6; Hansen Decl.) If those issues should prove unmanageable, the
> court retains authority to take appropriate remedial measures, including, if
> necessary, decertifying the class.

18   (Dkt. 61, p. 21 citing *United Steel Workers Int'l Union*, 593 F.3d at 807.)

19   **A.     Discovery**

20          In April 2014, native files of the call detail logs were produced.  Gruber Decl. Ex. 1 (Dkt.

21   93).  In July 2015, Plaintiffs issued a subpoena to inContact (Dkt. 90-12), as well as to Sales Genie

22   (Dkt. 90-11).  In July 2015, Plaintiffs also issued subpoenas to multiple telephone carriers:

- World Communications, Inc.                              (Dkt. 90-5)
- Verizon Business fka MCI Worldcomm Communications      (Dkt. 90-6)
- TW Telecom of Washington LLC                           (Dkt. 90-7)
- TTS Digital Services                                   (Dkt. 90-8)
- Teleport Communications America, LLC                   (Dkt. 90-9)
- International Telecom, Ltd.                             (Dkt. 90-10)

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 10
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

| | |
|---|---|
| • Hood Canal Telephone Co. | (Dkt. 90-13) |
| • Advanced Telecom Group, Inc. | (Dkt. 90-14) |
| • Birch Communications, Inc. fka Cbeyond Communications, Inc. | (Dkt. 90-15) |
| • Frontier Communications of America, Inc. | (Dkt. 90-16) |
| • Whidbey Telephone Company | (Dkt. 90-17A) |
| • Mashell Telecom, Inc. dba Rainer Connect | (Dkt. 90-19) |
| • Integra Telecom, Inc. | (Dkt. 90-23) |
| • Flowroute, Inc. | (Dkt. 90-25) |
| • Computer 5*, Inc. dba Local Tel Communications | (Dkt. 90-28) |
| • Charter Communications | (Dkt. 90-30) |
| • Broadvox-CLEC, LLC | (Dkt. 90-32) |
| • Astound Broadband, LLC | (Dkt. 90-34) |
| • Axxis Communication | (Dkt. 90-36) |
| • Granite Telecommunications, LLC | (Dkt. 90-38) |
| • Hypercube Telecom, LLC | (Dkt. 90-39) |
| • Time Warner Cable | (Dkt. 90-41) |
| • CenturyLink | (Dkt. 90-43) |
| • Comcast | (Dkt. 90-44) |
| • Onvoy, LLC | (Dkt. 90-46) |

The following telephone carriers provided no records in response to the subpoenas: Hypercube Telecom; Comcast; Time Warner; Granite; Axxis; Charter; Whidbey; Frontier; Birch; Advanced; Hood Canal; International Telecom; Teleport, TSS Digital; TW Telecom; Verizon; and WorldComm (721 calls). (Dkt. 90.) A minimum of approximately 26,000 telephone calls alleged to be at issue are represented by these carriers. Additionally, Plaintiffs produced no further analysis of addresses and/or corresponding switch locations. A review of the subpoenas issued provided no evidence that carrier switch location information was requested from the carriers. (Dkts. 95-6 through 95-10; Dkts. 90-13 through 95-17A; Dkts. 90-23 through 95-25; Dkt. 90-30; Dkt. 90-32.; Dkt.90-34; Dkt. 90-36; Dkt. 90-38; Dkt. 90-39; Dkt. 90-41; Dkt. 90-43; Dkt. 90-44; Dkt. 90-46.)

**B.     Review of the Telephone Records Produced**

The telephone carrier records obtained by Plaintiffs demonstrate that in many instances, the telephone numbers called by Appstack have been archived, assigned, or re-assigned since Appstack ceased operations. For example, Computer 5 provided one page of telephone numbers,

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 11
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

with dates, customer numbers, and name and what type of call forwarding was available.  (Dkt. 90-29, p. 5.)  Of the phone numbers listed, seven have dates in 2014 and 2015, for example:  Heal Wellness Studio (6/3/2014); Lake Chelan Building Supply (8/19/2015); Allen Construction (4/11/2014); John Beuhler PLLC (6/17/2015); Salcido Connection (1/27/2014).  Id.  Computer 5 also provided a handwritten note that stated, "We have no ability to look back at these calls to see if they were forwarded or not."  (Dkt. 90-29, p. 4.)

Flowroute provided a one-page list of 40 call records that indicate it had no record of 17 of the requested telephone calls.  (Dkt. 90-27, p. 2.)  Each of these telephone calls had a ported date of 2015 (as indicated in the column entitled "Ported Date").  In fact, each of the telephone calls on the list of calls provided by Plaintiffs to Flowroute had a ported[3] date of 2014 or 2015 – well after Appstack stopped making calls.

Integra Telecomm provided correspondence in response to the subpoena issued explaining the records it provided.  Cohen Decl. Ex. 19B (Dkt. 90-24).  In pertinent part it says,

> Attached as separate pdf documents are the following spreadsheets:
>
> - **2013 Auto Forwards** shows a list of telephone numbers during 2013 (which Exhibit C requests), that had auto forwarding activated, and showing, in some cases, the phone number they were forwarded to.
> - **2013 User Programmable Call Forwarding** lists the accounts where the subscriber can program their own call forwarding filtered for 2013.

(Dkt. 90-24 (INTEGRA_0001).)   The subpoenaed records Plaintiffs obtained from Integra Telecom demonstrate that a large quantity of telephone numbers were programmed to auto forward in 2013.  The records indicate that over 200 Integra Telecom telephone numbers were programmed to "auto forward in the 2013 time frame."  An additional 400 Integra Telecom telephone numbers had "user programmable call forwarding in the 2013 time frame."

---

[3]   See, Fischer Decl. ¶ 4 (Dkt. 87). When a telephone number was ported indicates the date the number was distributed to the carrier for use.

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 12
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1    The letter also says,

2        In response to the request in Exhibit C, the only way to determine if each
         call, on this extensive list, was forwarded, would be to gather all outgoing
3        call detail for each of the 440 phone numbers.  In the normal course of
         business, Integra does not retain outgoing local call detail for its subscribers.
4        Therefore, Integra cannot provide this information for the Exhibit C phone
         numbers.  Id.
5

6    Gorge Networks ("Axxis") provided a response that indicated that one of the three numbers

7    listed by Plaintiffs was "a permanent Call Forward." (Dkt. 90-37.) The other two have subscribed

8    to call forwarding.  It does not keep records on enabling features.  Id.

9        Wave provided a response that indicated it could provide the current call forwarding status,

10   but it not provide any historical data.  (Dkt. 90-35, p. 3.)

11       All of the telephone carriers from whom the Plaintiffs obtained records from indicated that

12   most of the telephone numbers had some kind of call forwarding capability.  Many of the telephone

13   carriers either do not keep these records or are not able to track call forwarding by individual

14   telephone subscribers because the individual subscriber controls the call forwarding feature.

15   Furthermore, the letter from Integra notes that two of the phone numbers attributed to it by

16   Plaintiffs' expert "are not active and never have been." (Dkt. 90-24, p. 46.) It is not clear how

17   non-active telephone numbers could have received telephone calls from Appstack.  Integra is not

18   the only telephone carrier that indicated that one or more telephone numbers attributed to it by

19   Plaintiff's expert were not assigned to it.  Onvoy also provided a response to the subpoena that

20   says,

21       With regard to the list of telephone numbers attached as Exhibit B to the
         subpoena, all but forty-nine (49) of the numbers are currently either
22       unassigned or assigned on a wholesale basis to other service providers who
         use them in the provision of their own services.  Onvoy has no information
23       regarding what services are subscribed to by the end users of these
         telephone numbers as the end users are not Onvoy customers.   The
24       remaining forty-nine (49) numbers are assigned to larger wholesale
         business customers.
25

26   (Dkt. 90-47, p. 3 (Onvoy_0002).) The list Plaintiffs provided to Onvoy in Exhibit B appear to

**DEFENDANTS' MOTION TO**
**DECERTIFY BOTH WADAD CLASS AND**
**TCPA CLASS** - Page 13
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1    contain 278 separate telephone numbers.  Cohen Decl. ¶ 2, Ex. 1.

2         Broadvox similarly provided responses to Plaintiffs' subpoena for the 13 telephone

3    numbers Plaintiffs' expert attributed to Broadvox.  Cohen Decl. Ex. 23B (Broadvox_1 – 24).  Of

4    the 13 telephone numbers provided by Plaintiffs, the records indicate that two were archived

5    (Dkt. 90-33, pp. 24-25 (Broadvox_23 and_24)), and three of the telephone numbers had been

6    assigned *after* 2013:  assigned 5/19/2014 (Dkt. 90-33, p. 20 (Broadvox_19)); assigned 3/31/2014

7    (Dkt. 90-33, p. 16  (Broadvox_15)); assigned 1/9/2015 (Dkt. 90-33, p. 13 (Broadvox_12)(noting

8    #Recycled by MZiemer 12/11/2014)).

9         A telephone call placed to the first telephone number listed on Exhibit 1 to the Hoover

10   Decl. ¶ 3 (Dkt. 54) resulted in an automatic message indicating the telephone number is not in

11   service.  Cohen Decl. ¶ 33 (Dkt. 90).  Other telephone calls made to telephone numbers listed on

12   the first page yielded an automatic message (such as is generally associated with a mobile

13   telephone number or call forwarding), "Please wait while we locate your party; your party is being

14   located."  Cohen Decl. ¶¶ 33-35 (Dkt. 90).[4]

15        Defendants now respectfully request that the Court decertify both the WADAD class and

16   the TCPA class for the reasons explained below.  The telephone records obtained by Plaintiffs

17   indicate the records fall far short of the type of information Plaintiffs expected to obtain, and

18   demonstrates that both classes certified by the Court are overbroad as well as under-inclusive and

19   suffer from issues of typicality and commonality that are fatal to further proceedings.  Class

20   members' claims are therefore no longer "sufficiently cohesive to warrant adjudication by

21   representation" and precludes the court from issuing class-wide relief."  *Hanlon v. Chrysler Corp.,*

22   150 F.3d 1011, 1019 (9th Cir. 1998) (citing *Amchem Products v. Windsor, et. al,* 521 US 591, 622-

23   23, 117 S. Ct. 2231, 2249, 138 L.Ed.2d 689 (1997).

24

25   _____

26   [4]     These types of messages are associated with the rental of a telephone carrier to another
     carrier.  Fischer Decl., ¶ 10 (Dkt. 87).

**DEFENDANTS' MOTION TO**
**DECERTIFY BOTH WADAD CLASS AND**
**TCPA CLASS** - Page 14
Case No. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

# IV.   STANDARDS

## A.   Class Actions Generally

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999).  "An identifiable class exists if its members can be ascertained by reference to objective criteria. A class description is insufficient, however, if membership is contingent on the prospective member's state of mind." *Id.* (internal quotation marks omitted).  "In other words, it must be administratively feasible to determine whether a particular person is a class member." *Id.*

A purported class plaintiff must satisfy all of the prerequisites of Federal Rule of Civil Procedure ("FRCP") Rule 23(a) and demonstrate that at least one of the requirements of 23(b) have been met; the burden is on the plaintiff. *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).  FRCP Rule 23(a) permits class certification only if:

      (1)   the class is so numerous that joinder of all members if impracticable;

      (2)   there are questions of law or fact common to the class;

      (3)   the claims or defenses of representative parties are typical of the claims or defenses of the class; and

      (4)   the representative parties will fairly and adequately protect the interests of the class.

FRCP 23(a).

Under FRCP 23(b), a class action may only be maintained if the aforementioned requirements are met and if:

      (1)   prosecuting separate actions by or against individual class members would create a risk of:

          (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

          (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 15
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2)    the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3)    the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class actions is superior to other available methods for fairly and efficiently adjudicating the controversy. . .

FRCP23(b).

"While the primary focus is not on the merits of the plaintiff's claims, courts 'must perform a 'rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'"" *Lane v. Kitzhaber*, 283 F.R.D. 587, 593 (2012) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011), quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)). The party "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart v. Dukes*, 131 S.Ct. at 2551 (emphasis in original). In performing this "rigorous analysis," the court's examination will undoubtedly entail some overlap with the merits of the plaintiff's underlying claim. *Lane v. Kitzhaber*, 283 F.R.D. at 593-594.

Plaintiffs' classes were certified under Rule 23(b)(3) which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (Dkt. 52; Dkt. 61.)

**B.**    **Motions to Decertify Classes Specifically**

Under Rule 23, a district court may decertify a class based on developments that arise during the course of litigation. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."). Indeed, the power to decertify a class is "a vital

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 16
CASE No. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1  ingredient in the flexibility of courts to realize the full potential benefits from the judicious use of

2  the class action device." *Kelley v. Microsoft Corp.*, C07-0475 MJP, 2009 WL 413509, at *2 (WD

3  Wash Feb. 18, 2009) (quoting 3 Alba Conte & Herbert Newberg, Newberg on Class Actions §

4  7:47 (4th ed. 2002)).

5      "Ninth Circuit precedent indicates that the Court has broad discretion to decertify a class

6  if it finds that the requirements of Rule 23 have not been satisfied." *David v. Bankers Life & Cas.*

7  *Co.*, C14-766RSL, 2015 WL 3994975, at *3 (WD Wash June 30, 2015) (*citing United Steel, Paper*

8  *& Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO, CLC v.*

9  *ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010)).

## V.      POINTS AND AUTHORITIES

### A.      The Technological Reasons Decertification Is Proper

12      The record reveals to the Court a series of at least five technological problems that each

13  demonstrate numerous procedural and substantive problems with maintaining both the WADAD

14  class and the TCPA class.  Taken as a whole, this demonstrates beyond any genuine doubt that

15  neither class should be maintained.

#### 1.      The Records Problem

17      The lack of records reported by many of the carriers is a strong indication that there is, at

18  a minimum, a discrepancy between Plaintiffs' expert's interpretation of the Neustar historical data

19  and the telephone carriers' call records.  A number of the telephone carriers who produced records

20  indicated that they had no record of telephone numbers that Plaintiffs' expert claimed to have

21  identified as belonging to that carrier at the time of Appstack's calls.

22      For example, Plaintiffs' expert ascribed 40 calls were dialed by Appstack to phone numbers

23  that he asserted been assigned to Flowroute.  (Dkt. 90-27, p. 2.)  However, for 17 of the 40 calls –

24  nearly half – Flowroute had no record of those calls.  Id.  Similarly, the letter from Integra notes

25  that two of the phone numbers Plaintiffs' expert asserted had been assigned to Flowroute "are not

26  active and never have been." (Dkt. 90-24, p. 46.)  Onvoy also provided a response to the subpoena

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 17
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   that indicated that of the 278 separate telephone numbers Plaintiffs' expert ascribed as belonging

2   to Onvoy at the time the Appstack calls were made,

3    …all but forty-nine (49) of the numbers are currently either unassigned or
    assigned on a wholesale basis to other service providers who use them in

4    the provision of their own services.  Onvoy has no information regarding
    what services are subscribed to by the end users of these telephone numbers

5    as the end users are not Onvoy customers.  The remaining forty-nine (49)
    numbers are assigned to larger wholesale business customers.

6

7   (Dkt. 90-47, p. 3 (Onvoy_0002).)  This issue alone raises serious questions about either: 1) the

8   accuracy of the information Plaintiffs' expert relies on or 2) his interpretation of the information.

9     **2. The Porting Problem**

10    Records produced by the telephone carriers clearly show that at least some of the telephone

11  numbers that Plaintiffs' expert identified as being a cellular phone at the time of Appstack's call

12  had a ported date ***after*** Appstack stopped making telephone calls in October 2013.  Porting is the

13  practice of moving telephone numbers from one telephone carrier to another.  Porting may coincide

14  with change of subscriber; intermodal porting is changing a telephone number previously

15  associated with a landline into a cellular telephone number of vice versa.  Fischer Decl. (Dkt. 87).

16    Although it is not clear whether the carriers are using "porting" to refer to a telephone

17  number that was ported in or out (Id.), either way, it indicates a change occurred to the telephone

18  number after Appstack made it calls – either the number was given to a new carrier, there was a

19  change in subscriber, or a subscriber changed the number from cellular telephone to landline.

20    The WADAD requires proof that a call was received on a Washington landline.  The TCPA

21  requires proof that a call was made to a cellular phone.  Plaintiff may claim that its expert used

22  historical data to pull records from Neustar, but the evidence demonstrates that porting poses an

23  evidentiary problem which Plaintiffs are not able to solve on a class-wide basis.

24    As explained, Flowroute provided a list that indicated that of the 40 calls of the Plaintiffs

25  ascribed to that telephone carrier, 40 of the numbers called had a ported date after Appstack

26  stopped making calls. (Dkt. 90-27, p. 2.)  Each of the calls on the list of calls provided by Plaintiffs

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 18
CASE No. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   to Flowroute had a ported date of 2014 or 2015 – after Appstack stopped making calls.

2     This is no help to Plaintiffs' WADAD class.  At a minimum, it is an indication that

3   Plaintiffs' expert is interpreting the historical data he obtained from Neustar in a manner that is

4   not borne out by the telephone carriers call records.  Although Plaintiff claims that Neustar

5   indicates which carriers have been assigned telephone numbers at the time Appstack made its calls,

6   this is contradicted by the carrier call records.  There does not appear to be any feasible way to

7   solve this problem other than through an individualized inquiry.

8     **3.**  **The Telephone Number Recycling Problem**

9     Telephone numbers are routinely recycled.  See FCC 15-72, Declaratory Ruling and Order,

10   *supra.* Fischer Decl. ¶ 8.  Federal courts have held that, "No one - not Customer, not Bystander,

11   not even the phone company - has a property right in a phone number." *See, Osorio v. State Farm*

12   *Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014) (discussing the reassignment of cell phone

13   numbers in the context of consent) citing *Jahn v. 1–800–FLOWERS.com, Inc.*, 284 F.3d 807 (7th

14   Cir. 2002); also see *In re Best Re-Manufacturing Co.*, 453 D.2d 848, 849 (9th Cir. 1971).

15     In 2011, the FCC estimated that 37 million telephone number are recycled per year.

16   (Dkt. 90-1.)  With the quickness and pervasiveness of phone number recycling, Plaintiffs face

17   exceedingly high burden to show who had a particular phone number when a particular call was

18   received, and what manner of system (landline, cellular, etc.) was in use.  Critically, the telephone

19   call detail records obtained by Plaintiff demonstrate that in many instances the telephone numbers

20   called by Appstack have been archived, assigned, or re-assigned or otherwise recycled since

21   Appstack ceased operations.  Of the 13 telephone numbers provided by Plaintiffs to Broadvox, the

22   records indicate that two were archived (Cohen Decl. 23B (Dkt. 90-33, pp. 24-25 (Broadvox_23

23   and_24)) and three of the telephone numbers had been assigned after 2013 (5/19/2014 (Dkt. 90-

24   33, p. 20 (Broadvox_19); 3/31/2014 (Dkt. 90-33, p. 16 (Broadvox_15); 1/9/2015 (Dkt. 90-33, p. 13

25   (Broadvox_12) (noting #Recycled by MZiemer 12/11/2014)).

26   ///

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 19
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1       Appstack cannot have any liability to the owners of telephone numbers assigned, re-

2  assigned, or recycled since Appstack ceased operations because the owners of these newly

3  assigned telephone numbers could not have received a telephone call from Appstack.  The owner

4  of a new telephone number (who has never received a call) has no entitlement to damages for a

5  call made to the previous owner.  (Dkt. 52, p. 31.)  Plaintiffs have not demonstrated, nor can they

6  demonstrate that this problem can be resolved with a singular, quick class-wide solution.

7      **4.**    **The Wide-Area Network (WAN) Problem**

8       Just as significant is the wide-area network, or "WAN" problem.  Calls can easily be routed

9  outside of Washington, and received there over a customer's WAN.  Fisher Decl., ¶ 14 (Dkt. 43).

10  Plaintiffs have no suggestion as to how to address this problem, and indeed there appears to be

11  little solution that does not involve individual mini-trials for each specific phone number.  With

12  the size of the WADAD class and the TCPA class, however, this would plainly make this case too

13  cumbersome and individually driven to maintain as a class action any longer.

14      **5.**    **The Call-Forwarding Problem**

15       Plaintiffs also have no class-wide solution to overcome the call-forwarding problem.

16  Fisher Decl., ¶ 14 (Dkt. 43).  Call forwarding permits calls to be forwarded outside of Washington,

17  even in the case of numbers with Washington area codes, and any such call that terminates outside

18  Washington must be excluded from the WADAD.  Similarly, a cellular number can be forwarded

19  to a landline or some other non-cellular device, removing the call from the ambit of the TCPA

20  class.  Calls to those numbers at issue could have easily been outside the scope of both classes.

21  The only way to determine this is by individual mini-trials for each specific phone number.

22       Critically here, evidence elicited by Plaintiffs demonstrates no way of determining whether

23  a phone call was forwarded without individualized inquiry because of variable call forwarding.

24  Fischer Decl., ¶ 12.  All of the telephone carriers from whom the Plaintiffs obtained records

25  indicated most of the telephone numbers have some kind of call forwarding capability.  (Dkt. 90-

26  20; Dkt. 90-21; Dkt. 90-22; Dkt. 90-24; Dkt. 90-29, pp. 5-6; Dkt. 90-35, p. 35; Dkt. 90-47, p. 3.)

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 20
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   Many of the carriers either do not keep these records or cannot track call forwarding because

2   individual subscribers control the call forwarding feature.  Fischer Decl. ¶ 12 (Dkt. 87).

3        For example, all of the records obtained from Computer 5 had some kind of call forwarding

4   capability.  Integra Telecom's records demonstrate that a large number of telephone numbers were

5   programmed to auto forward in 2013.  Cohen Decl. Ex. 19B (Dkt. 90-24, p. 2).  Over 200 Integra

6   Telecom telephone numbers were programmed to "auto forward in the 2013 time frame."  Id.  An

7   additional 400 Integra Telecom telephone numbers had "user programmable call forwarding in the

8   2013 time frame."  Id.  Comcast does not have records of a subscriber activating call forwarding

9   or to what numbers calls were forwarded.  Cohen Decl. Ex 30B (Dkt. 90-45 (Comcast _001).)

10       Furthermore, current technology (and existed at the time the calls were made) does not

11  allow the Court to conclude that a number was received in the state of Washington simply by virtue

12  of its area code and the fact that it was listed as a landline at the time of the search.  In its Order

13  denying initial Class Certification for the WADAD class, the Court noted that Plaintiff conceded

14  this.  (Dkt. 52, p. 33 citing Dkt. 35, p. 14.)  Through technology such as VoIP, and call forwarding,

15  calls terminated to a Washington landline may be internally forwarded to a computer, a cell phone,

16  or landline anywhere in the world.  Fischer Decl. ¶¶ 14-18 (Dkt. 43).

17       **6.   The VoIP Problem**

18       There is another similar yet just as troublesome problem for Plaintiff in the "VoIP"

19  problem.  Fisher Decl. ¶ 16 (Dkt. 43).  Modern phone systems are designed to give end users full

20  control of inbound and outbound caller identification and VoIP systems give such customers the

21  ability to provide a virtual presence in any state, even if they have physical presence only outside

22  of the state of Washington.  Fisher Decl. ¶ 16 (Dkt. 43).  This presents plain and cumbersome

23  problems for both the WADAD class and the TCPA class.

24       **VI.   THE WADAD CLASS SHOULD BE DECERTIFIED**

25  **A.   The Current WADAD Class**

26       The WADAD class is currently defined as follows:  "All persons who received on a

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 21
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1  landline located within the State of Washington one or more pre-recorded telephone messages

2  placed by Defendants or on Defendants behalf on or after August 27, 2009, through the date of

3  final disposition of this action." Order, p. 5, July 13, 2015 (Dkt. 61).

4  **B.     Individual Class Member Questions Predominate**

5         Individualized issues that pertain to virtually every class member predominate over class-

6  wide issues, resulting in a class that will be too unruly and cumbersome to maintain.

7  FRCP 23(b)(3)(D). The WADAD class was certified upon Plaintiffs' representations that critical

8  WADAD elements could be resolved with "a straightforward, mechanical review of carrier records

9  that can be summarized and presented via expert testimony, rather than by individual mini-trials."

10  Order, p. 19, July 13, 2015 (Dkt. 61). However, that is not so. Determining who is in the class,

11  who should remain in the class, and whether each particular claim should succeed or fail cannot

12  be resolved in a uniform, straightforward, or mechanical fashion in this case. To the contrary,

13  multiple critical determinations cannot be made with a uniform "mechanical" review of cold

14  business records. As the following will demonstrate, this should result in decertification of the

15  WADAD class and Defendants respectfully request the same.

16        As a starting point, the WADAD class is limited to a small range of time. Appstack laid

17  off its sales team on September 24, 3013. (Dkt. 36-1, p. 49.) Appstack's account with inContact

18  was disconnected on Monday, October 7, 2013. (Dkt. 36-1, p. 46.) Appstack ceased doing

19  business in October 2013. Therefore, the class at issue that would define class members needs to

20  have been made between August 27, 2009 and October 7, 2013. The WADAD class members

21  must have information settled about them for dates going back approximately seven years, and at

22  a date no later in time than three years ago, and the class is essentially closed to future members.

23        Plaintiffs' attempt to win summary judgment has also shown the intractable flaws in the

24  WADAD class in its own right. The WADAD provides: "No person may use an automatic dialing

25  and announcing device for purposes of commercial solicitation." RCW 80.36.400(2). An

26  automatic dialing and announcing device is defined as "a device which automatically dials

**DEFENDANTS' MOTION TO**
**DECERTIFY BOTH WADAD CLASS AND**
**TCPA CLASS** - Page 22
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   telephone numbers and plays a recorded message once a connection is made."

2   RCW 80.36.400(1)(a).  Appstack was a California company using a Utah vendor to dial calls on

3   its behalf.  As such, any calls to people or entities located outside Washington are not actionable

4   under WADAD.  *Hartman v. United Bank Card,* 291 F.R.D. 591, 599 (WD Wash 2013).

5       As previously decided by this Court in *Hartman*, WADAD requires that the calls must be

6   *received* in the state of Washington; to permit application to calls made to state's residents who

7   were outside the state would give the statute extraterritorial application in violation of the dormant

8   commerce clause.  *Hartman,* 291 F.R.D. at 599.  Although Plaintiffs purport to limit their claims

9   to landline telephone numbers, it is not possible to conclude that these calls were ***actually received***

10  by the party currently identified with the landline or received in the state of Washington.  Fischer

11  Decl., ¶¶ 1-14 (Dkt. 43).  There is no evidence that these telephone numbers were Washington

12  landlines ***at the time the calls were made or received***.

13      Plaintiffs purport to have identified class members through a reverse look-up directory.

14  However, there are numerous intractable problems with this method.  First, this evidence is not

15  admissible; as out-of-court statements offered for the truth of the matter asserted, this is

16  inadmissible hearsay.  Next, even if they were admissible, it is not possible to conclude that these

17  calls were actually received by the party currently identified with the landline.  More so, it is not

18  possible to conclude that these calls were received in the state of Washington.

19      Plaintiffs' attempts to overcome these difficulties are clearly unavailing.  For example,

20  Exhibit 1 to the Declaration of Rachel E. Hoover ("Hoover Decl.") (Dkt. 54) includes an appended

21  spreadsheet compiled from the website SearchBug that purports to show location information for

22  the listed Washington telephone numbers.  This was compiled using a purported "reverse look up"

23  service or other internet search tools.  Notwithstanding admissibility issues, this "evidence" shows

24  insurmountable problems with maintaining the WADAD class.

25      As has been discussed before, it is telling that a telephone call placed to the very first

26  telephone number listed on Exhibit 1 resulted in an automatic message indicating the telephone

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 23
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1  number is not in service.  Cohen Decl. ¶ 33 (Dkt. 90, p. 5). Other telephone calls made to telephone

2  numbers listed on the first page yielded an automatic message (such as is generally associated with

3  a mobile telephone number or call forwarding): "Please wait while we locate your party; your party

4  is being located." Cohen Decl. ¶¶ 33-35 (Dkt. 90, p. 5).  These types of messages are associated

5  with the rental of a telephone carrier to another carrier.  Fischer Decl. ¶ 10.  This method does not

6  in any way show that the party who *currently* holds a particular phone number held that same

7  phone number *at a time when a call was received during the class timeframe*, and at a time when

8  said number was actually a Washington-based landline.   Given the evidence regarding the

9  recycling and porting of numbers, Plaintiff's method of identifying class members is unreliable.

10  **C.      There is No Single Set of Business Records for Quick and Easy Searching**

11          The record demonstrates that critical issues of this case will not be determinable simply by

12  looking at a single set of business records.  For example, Appstack ran its own marketing

13  campaigns to identify potential clients.  Appstack contracted with inContact in March 2013 for use

14  of an autodialer as part of its telephone marketing efforts.  (Dkt. 36-2, p. 5.)  However, Appstack's

15  marketing efforts were not limited to telephone marketing.  Kirkpatrick Decl. ¶ 5; Espinosa Decl.

16  ¶ 2.   Appstack's campaigns included internet marketing and online self-signup in addition to

17  telephone marketing. Id. (Dkt. 36-1, p. 80).  Online marketing on platforms like Facebook allowed

18  customers and potential customers to sign up online by proving their contact information,

19  including telephone numbers.  Id. (noting "online self-sign up yielded 574 visits (486 uniques)").

20  The engagements sought by Appstack ran the gamut of small business from Salem

21  Communications (a National Christian Radio Group) to Planet Soho, "who works with thousands

22  of tiny businesses to Mercy Corp."  (Dkt. 36-2, pp. 37, 51.)

23          Appstack's mobile marketing service was offered to clients on a monthly basis.  Id.  As

24  explained by Mr. Ricci at his deposition,

25              business was month to month, so you – if you bought the service, it was –
            you paid monthly.  And so the – a churn rate is if you got a hundred
26

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 24
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

customers that are to renew within one month, if 90 of them review that is
a 10% churn rate. . . . like attrition.

(Dkt. 36-1, p. 3.).  To combat attrition, Appstack initiated at least one "win-back" campaign in an attempt to regain former clients.  Espinosa Decl.¶ 5 (Dkt. 88).  In addition to the telephone numbers obtained through Sales Genie, Appstack made automatic dialer sales calls to former customers. (Dkt. 36-1, pp. 17,[5] 36, 75-76.) (Dkt. 36-2, p. 36 (noting "[t]he team had an interesting week last week due to brain damage from the win back program and failure of the DNC list.")).  This raises several roadblocks to a simple "mechanical" records analysis to determine class membership, given the multitude of sources of potential phone numbers that exist.

**D.    If Allowed to Persist, the WADAD Class will be Underinclusive and Overinclusive**

The foregoing demonstrates critically that the WADAD class will, of necessity, be both underinclusive and overinclusive.  It will be *under*inclusive because it will almost certainly miss those persons with Washington landlines who received calls yet later gave up their telephone number.   Plaintiffs proposes no method for locating such persons with a single motion.

Moreover, the class will be *over*inclusive because it will include persons who are currently assigned telephone numbers who received one or more calls (a potential class member). These people did not receive a phone call during the class period – these people were assigned the telephone number in question only after Appstack stopped making calls.  Those members will receive an unfair boon at the expense of the prior number holder, yet Plaintiffs currently have no way to prevent this outcome with a single procedure that does not involve number-by-number mini-trials.

The WADAD class fails both the critical predominance and superiority elements of certifying and maintaining and class action lawsuit.  "Predominance and superiority ensure that

---

[5]     "The win back is in reference to the churned customers.  And the automatic dialer would be the – the calls that are made out to –based on numbers that we have. ... on the win back list." (Dkt. 36-1, p. 17.)

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 25
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   class treatment will 'achieve economies of time, effort, and expense, and promote ... uniformity of

2   decision as to persons similarly situated, without sacrificing procedural fairness or bringing about

3   other undesirable results.'" *Bell v. Addus Healthcare, Inc.*, C06-5188RJB, 2007 WL 3012507, at

4   *2 (WD Wash Oct. 12, 2007) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)

5   (quoting Fed.R.Civ.P. 23 advisory committee's notes (1966))).   Maintaining the WADAD class

6   will, to the contrary, be time consuming, difficult, expensive, and will sacrifice the rights of class

7   members who cannot be located, while simultaneously conferring an undesirable and unjust

8   benefit on those who simply happen to hold one of the class phone numbers today.

9   **E.      The WADAD Class should be Decertified**

10      The foregoing demonstrates that the WADAD class should be decertified.    Because

11  individual issues will predominate over class issues, claims will not be resolvable without issue-

12  by-issue mini-trials and Plaintiffs' claims in large part simply cannot be established in an effective

13  manner in this lawsuit.

14  **VII.    THE TCPA CLASS SHOULD BE DECERTIFIED**

15      Defendants further note that the same problems that permeate Plaintiffs' WADAD class,

16  and problems very similar, are also fatal to Plaintiffs' TCPA class.

17  **A.      The Current TCPA Class**

18      On March 30, 2015, the Court certified a TCPA class with the following definition:

19          All persons or entities in the United States who, or on after four years before
            the filing of this action, received a call to their cellular telephone line with
20          a pre-recorded message, made on or behalf of Defendants.

21  Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification, p. 13,

22  March 30, 2015, (Dkt. 52).

23  ///

24  ///

25  ///

26

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 26
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

**B.      The TCPA Class Fails for the Same Reasons the WADAD Class Fails**

As with the WADAD class, the TCPA class faces pervasive structural problems that fatally undermine the efficacy of using the class-action format.  As with the WADAD class, moreover, the TCPA class should be decertified.

First, Plaintiffs cannot overcome the problem of being able to establish that all putative class members who received calls during the relevant period received said call to a cellular phone on a number that was theirs at the time of reception.   The problems revealed by Plaintiffs' "SearchBug" methodology and related concerns raised above in relation to the WADAD class apply with equal force here. Again, there is no evidence that there is any historical database available to Plaintiffs that would allow them to determine who was assigned any particular telephone number at the time calls were made.

Second, Plaintiffs have proposed no method that would allow the Court to determine which calls Appstack made were win-back calls.  There is clear evidence in the record that Appstack made calls to prior customers as well as others who provided telephone numbers and contact information to receive more information about Appstack's service.  (Dkt. 36-1, pp. 17, 36, 75-76.) (Dkt. 36-2, p. 36.)   However, Plaintiffs have not provided any proposal for dealing with this method that would avoid an individualized inquiry.

Third, Plaintiffs cannot overcome the technological problems presented by the telephone records, the porting problem, the telephone number recycling problem, and the call forwarding problem.

**C.      The TCPA Class should be Decertified**

The problems maintaining the TCPA class are just as daunting and irreconcilable as those facing the WADAD class.  Both classes, accordingly, should be decertified.

///

///

///

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 27
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

**D.     Both the WADAD Class and TCPA Class will be Impermissible "Fail-Safe" Classes, Particularly if Plaintiffs Obtain Summary Judgment**

In addition to the above, both the WADAD class and TCPA class face dispositive problems that will force both classes to fold, particularly if Plaintiffs prevail on their summary judgment argument concerning prior consent of putative class members. Although Defendants maintain the following problem exists for both classes either way, if the Court concludes Plaintiffs are entitled to summary judgment on the issue of consent, then both classes will be de facto "fail-safe" classes that should not remain certified, as will be explained below.

**E.     The Fail-Safe Class Problem**

As this Court and the Ninth Circuit Court of Appeals have recognized, there is a substantial problem with so-called "fail-safe" classes. As this Court has previously recognized,

> A fail-safe class occurs "when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). "Because the TCPA prohibits calls to cellular telephones using [a prerecorded voice] unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class.

Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification, pp. 11-12, March 30, 2015, (Dkt. 52). Commentators have noted the pervasive and unfair advantage that a fail-safe class hands to class action plaintiffs, namely that "[a] fail-safe class thus creates a 'heads I win, tails you lose' situation, where class members either receive a favorable judgment or are defined out of the class." *Comment*, Erin L. Geller, THE FAIL–SAFE CLASS AS AN INDEPENDENT BAR TO CLASS CERTIFICATION, 81 Fordham L.Rev. 2769, 2771 (2013). This type of class is essentially a "no-lose" for Plaintiffs at the expense of procedural fairness.

Indeed, the unfair advantage of a fail-safe class has led the Sixth and Seventh Circuit Courts of Appeals to flatly reject such formulations entirely. To do otherwise gives putative class members an extreme and unfair advantage over a defendant and sets up an unwinnable scenario

**DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS** - Page 28
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

1   that "shields the putative class members from receiving an adverse judgment.  Either the class

2   members win or, by virtue of losing, they are not in the class and, therefore, not bound by the

3   judgment." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F3d 347, 352 (6th Cir 2011).  *See also*

4   *Adashunas v. Negley*, 626 F2d 600, 604 (7th Cir 1980) (rejecting fail-safe class).

5   **F.   Plaintiffs Cannot Avoid a Fail-Safe Class Catch-22**

6        Here, although Defendants disagree strongly with Plaintiffs' contentions and positions on

7   summary judgment, Plaintiffs' Motion for Summary Judgment has created a dispositive problem

8   for both the WADAD class and the TCPA class.  If Plaintiffs prevail at summary judgment, class

9   decertification is required because both will be undeniable fail-safe classes.  This Court noted that

10  Plaintiffs' initial proposed class was a plain and obvious fail-safe class, in large part because it

11  included in the proposed definition all persons who had received calls "without the recipient's

12  prior consent[.]" Order, p. 13, March 30, 2015, (Dkt. 52).  The Court modified Plaintiffs' proposed

13  class definition to address this issue, noting that omitting the prior consent language from the class

14  definition "removes the need to identify which persons gave consent in order to determine the

15  scope of the class, as well as the need to effectively determine liability in order to send class

16  notice." Order, p. 13, March 30, 2015, (Dkt. 52).

17       Plaintiffs argue "Defendants will not be able to present any actual evidence of consent at

18  trial, this issue should be resolved in favor of Plaintiffs and the TCPA Class on summary

19  judgment." Reply in Support of Plaintiffs' Motion for Summary Judgment, p. 6 (Dkt. 94).  If

20  Plaintiffs are correct (a point Defendants *strongly* disagree with), then the class at issue will return

21  by default to a fail-safe class action.  There is no other way to view the matter.

22       If Defendants are prohibited from arguing TCPA or WADAD class members gave prior

23  consent, that issue will be removed from consideration.  The class will be exclusively made up of

24  individuals for whom consent is irrelevant.  That scenario will have the same impact that including

25  "without the recipient's prior consent" in the class definitions.  That is, it will necessarily make

26  both classes into an unwinnable fail-safe class for Plaintiffs, defined exclusively in a fail-safe way.

**DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS** - Page 29
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

The crippling issue raised in *Onley*[6] from the Eastern District of California and *Taylor*[7] from the Western District of Washington, which this Court attempted to circumnavigate, will be revived in full force. Both classes will be "defined in a way that precludes membership unless the liability of the defendant is established." *Kamar*, 375 F. App'x at 736 (unpublished). Thus, if Plaintiffs win the proverbial "battle" on the issue of consent, they must necessarily lose the "war" on class decertification. Taking consent off the table forces both classes into fail-safe by default classes.

Thus, again, even though Defendants do not believe Plaintiffs should prevail at summary judgment on this issue, to the extent the Court grants summary judgment on the prior consent question neither the WADAD class nor the TCPA class could survive such a ruling and would need to be immediately decertified if that were the law of this case. This is yet another reason both classes should be decertified.

## VIII.   CONCLUSION

For the reasons stated above, Defendants respectfully request both the WADAD class and TCPA class should be decertified.

Dated this 26th day of April 2016.

SMITH FREED EBERHARD P.C.

By:   */s/ Anne Cohen*
Anne Cohen, WSB #41183
Email: acohen@smithfreed.com
Of Attorneys for Defendants

---

[6]   *Onley v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *11 (modifying the class definition to read "[a]ll persons within the United States who received any telephone call/s from Defendant . . . to said person's cellular telephone made through the use of any automatic telephone dialing system . . . .") as cited by this court. (Dkt. 52, p. 13.)

[7]   *Taylor v. Universal Auto Grp. I, Inc.*, No. 3:13-CV-05245-KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) ("The court . . . is persuaded that inclusion of the 'without prior consent' language in the national classes definition makes it a 'failsafe' class, as clearly the issue of consent is central to determining defendant's liability.) as cited by this court. (Dkt. 52, p. 12.)

DEFENDANTS' MOTION TO
DECERTIFY BOTH WADAD CLASS AND
TCPA CLASS - Page 30
CASE NO. 2:13-cv-01533-JLR

SMITH FREED EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

268i74

CERTIFICATE OF SERVICE

    I hereby certify that on April 26, 2016, I served **DEFENDANTS' MOTION TO DECERTIFY BOTH WADAD CLASS AND TCPA CLASS and [PROPOSED] ORDER** on:

| | |
|---|---|
| Beth E. Terrell | Daniel C. Gallagher |
| Mary B. Reiten | Gallagher Law Offices PS |
| Jennifer Rush Murray | 10611 Battle Point Drive NE |
| Terrell Marshall Law Group PLLC | Bainbridge Island, WA 98110 |
| 936 North 34th Street, Ste. 300 | (F) 206-855-2878 |
| Seattle, WA 98103-8869 | Email: dan@nwprolaw.com |
| Telephone: (206) 816-6603 | *Co-Counsel for Plaintiff* |
| Facsimile: (206) 319-5450 | |
| Email: bterrell@terrellmarshall.com | |
| Email: mreiten@terrellmarshall.com | |
| Email: jmurray@terrellmarshall.com | |
| *Of Attorneys for Plaintiff* | |

\_\_\_\_\_  by mailing to each of the foregoing a copy thereof, placed in a sealed envelope addressed as listed above and deposited in the United States mail at Portland, Oregon, and that postage thereon was fully prepaid.

\_\_\_\_\_  by emailing to each of the foregoing a copy thereof, at the email addresses shown above.

XX   by electronic means through the Court's Case Management/Electronic Case File system on the date set forth above.

Dated this 26th day of April, 2016.

SMITH FREED & EBERHARD, PC

By:   **/s/ Anne Cohen**
        Anne Cohen, WSB # 41183
        Email: acohen@smithfreed.com
        Of Attorneys for Defendants
        Appstack, Inc., Steve Espinosa and
        John Zdanowski

**CERTIFICATE OF SERVICE** -1   No. 3:13-cv-01533-JLR                                                    268i74

SMITH FREED & EBERHARD, P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424  /  Facsimile: (503) 227-2535